UNITED STATES

v.

**Thomas Albert GOODYEAR, 266 48 0333, Aviation Electrician's Mate Chief Petty Officer (E-7), U. S. Navy.**

**NMCM 82 0319.**

U. S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 2 July 1981.

Decided 27 July 1982.

LT Stephen R. Cochell, JAGC, USNR, Appellate Defense Counsel.

LCDR Michael R. McGuire, JAGC, USN, Appellate Government Counsel.

Before CEDARBURG, GORMLEY III and MAY, JJ.

MAY, Judge:

Appellant was convicted, contrary to his pleas, by special court-martial with officer members of fraternization with, and indecent assault upon, a female seaman recruit in violation of Articles 92 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 934. He was sentenced to a bad-conduct discharge from the naval service and reduction to pay grade E–1.

Appellant assigns the following errors:

## I

THE SECOND PROSECUTION OF APPELLANT FOLLOWING A DECLARATION OF MISTRIAL AT THE FIRST TRIAL ON GROUNDS OF FLAGRANT, UNPROFESSIONAL AND UNETHICAL ARGUMENT BY THE PROSECUTOR WAS BARRED BY THE FIFTH AMENDMENT DOUBLE JEOPARDY CLAUSE.

## II

THE TRIAL COUNSEL WAS DISQUALIFIED TO ACT AS PROSECUTOR IN THE SECOND TRIAL AS THE MILITARY JUDGE DECLARED A MISTRIAL ON GROUNDS OF IMPROPER ARGUMENT AND PROSECUTORIAL MISCONDUCT AT THE FIRST TRIAL.

## III

CHARGE II, SPECIFICATION 1, FAILED TO STATE AN OFFENSE OF ARTICLE 134, INDECENT ASSAULT, AS THE CHARGE DID NOT ALLEGE THAT THE ACT OF SEXUAL INTERCOURSE WAS AGAINST THE CONSENT OF THE COMPLAINING WITNESS.

## IV

THE ARGUMENT OF TRIAL COUNSEL WAS PREJUDICIAL TO THE SUBSTANTIAL RIGHTS OF THE ACCUSED.

## V

THE TESTIMONY OF SEAMAN RECRUIT [M] AGAINST AEC GOODYEAR WAS INSUFFICIENT TO SUSTAIN CONVICTIONS FOR INDECENT ASSAULT AND FRATERNIZATION BY EVIDENCE BEYOND A REASONABLE DOUBT.

## VI

THE AWARD OF A BAD–CONDUCT DISCHARGE AND REDUCTION TO

E–1 WAS INAPPROPRIATELY SEVERE UNDER THE CIRCUMSTANCES OF THIS CASE.

## VII

THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS CIVILIAN ATTORNEY, WHO HAD REPRESENTED HIM IN THE FIRST TRIAL AND OBTAINED A MISTRIAL UPON TIMELY OBJECTION TO IMPROPER TRIAL COUNSEL ARGUMENT, FAILED TO OBJECT TO SIMILAR ARGUMENT BY THE SAME TRIAL COUNSEL IN THE SECOND TRIAL INVOLVING THE SAME ACCUSED. *UNITED STATES V. RIVAS*, 3 M.J. 282 (C.M.A.1982). *SEE* ASSIGNMENTS OF ERROR I, II, III.

We find no merit in assignments I, II, III and VII. Our agreement with assignments IV and V make addressal of assignment VI unnecessary. We also believe some comment is warranted regarding assignment I.

## I

■ Appellant's first trial on these offenses was terminated following a declaration of mistrial by the military judge. The decision of the military judge was made in response to a defense motion for a mistrial following closing argument by trial counsel on the merits. The military judge at that trial apparently viewed the trial counsel's argument as improper and materially prejudicial to the appellant. We have examined the record of that first trial which is included as an appellate exhibit in the case *sub judice* in accordance with paragraph 82*b* (5), *Manual for Courts-Martial, 1969 (Rev.).* Trial counsel, in his closing argument, offered in part the following views of the Government:

> What motive does Seaman Recruit [M] have to lie? She didn't know the chief; she didn't have to say—to make a charge like this to get out of work for the chief.... There's absolutely no motive which has been proferred by the defense to show that Seaman Recruit [M] may have told a falsehood to this court.

The trial judge ruled that the final sentence in the above argument placed an improper inference and burden upon the accused to present evidence in response to the Government's case. The trial judge then observed that the accused had exercised his right to remain silent and to present no evidence in the case. Appellant's civilian counsel had focused his attack primarily on the credibility of the alleged victim via extensive cross-examination of the Government witness. In the view of the trial judge, the posture of the case at that point following the above-cited argument of the trial counsel necessitated a declaration of mistrial. The first trial was thereby terminated. We find no abuse of the trial judge's discretion in that decision and ruling.

Appellant now assigns error to the case *sub judice*, asserting that the Double Jeopardy Clause of the Fifth Amendment bars a retrial for the same offenses. Citing *United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971), appellant refers to language in that opinion which supports a proposition that when a mistrial has been declared as a result of a defendant's motion, that reprosecution is barred when the basis of the mistrial decision has been prosecutorial conduct "designed to avoid an acquittal." *Jorn, supra* at 485, n.12, 91 S.Ct. at 557, n.12. Further support is garnered by appellant in his citing of *United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1975), for the recognition of the obvious; that acts of the Government's prosecutors which were intentionally undertaken to provoke a defendant's mistrial motion would render the constitutional guarantees against multiple prosecutions of the same offenses a meaningless protection if a defendant could be retried following such purposeful and improper acts by officers of the Government. Appellant poses a standard of review which encompasses grossly negligent, as well as intentional, acts by prosecutors. In support of that view, appellant cites opinions from several federal circuits. *See United States v. Roberts*, 640 F.2d 225 (9th Cir. 1981); *United States v.*

*Cox*, 633 F.2d 871 (9th Cir. 1980); *United States v. Martin*, 561 F.2d 135 (8th Cir. 1977).

Appellant now offers, via an extensive brief and oral argument, the proposition that the trial counsel herein committed intentional and/or grossly negligent error in the above closing argument. The primary authority, however, cited now by appellant are the words of the trial judge who, in ruling in favor of appellant's mistrial motion at the first trial, stated:

I find the remarks of counsel to be flagrant, unprofessional and unethical. This is not the first time I have had to caution counsel in this respect.

Appellate defense counsel contends that the plain meaning of the trial judge's words is that the trial counsel's closing argument was made in "bad faith" and represents, therefore, intentional misconduct sufficient to bar retrial. Appellant asks this Court to apply a broad standard for military court-martial proceedings, of intentional misconduct, *gross negligence*, bad faith, or "apprehension of vindictiveness" to the actions of Government counsel to "protect the integrity of the military justice system."

This we will not do. There is no persuasive necessity or justification for establishing a standard for the review of military prosecutorial conduct beyond observable, intentional prosecutorial misconduct. We are aware that a recent decision of the Supreme Court holds that only intentional actions designed to provoke mistrial will bar retrial under the Double Jeopardy Clause. *Oregon v. Kennedy*, —— U.S. ——, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982). We emphasize also our view that the military justice system requires no expansion of the intentional misconduct standard. On the contrary, we are compelled to observe that our civilian brethren might justifiably look with some envy on the protections accorded our military defendants apart from, and in many instances, superior to, that experienced by federal and state civilian defendants. *See* Zimmerman, *Civilian v. Military Justice, A Comparison Of Defendants' Rights*, TRIAL, October 1981, at 34.

Appellate defense counsel also proposes that prosecutorial "overreaching" resulting in mistrials should also represent that level of prohibited conduct on the part of trial counsel which would bar retrial. Whatever may be the appropriate definition of "overreaching", we do not accept a definition that would bar zealous advocacy on the part of Government prosecutors, for they, like the trial defense counsel, are charged with the effective representation of the interests of a central party in court-martial proceedings. We, of course, will not broaden the range of approved conduct by Government prosecutors to permit the unbridled trampling of the constitutional and statutory rights of military defendants under an umbrella of "zealous advocacy." As recognized by the Supreme Court, standards utilizing such terms are not susceptible to effective and determinative application. Intentional misconduct is discernible from the trial record and can therefore be the basis of appellate remedy. *Oregon v. Kennedy, supra* at —— — ——, 102 S.Ct. at 2088–89.

In sum, from our examination of the entire record we find no indication of intentional actions on the part of Government counsel designed to provoke appellant's mistrial motion at the first trial of the case. We therefore find no merit in appellant's first assignment of error.

## IV. and V. Argument Of Trial Counsel; and Insufficiency Of Evidence

The factual circumstances underlying this case involve an alleged sexual assault upon a 20-year-old female recruit by a male chief petty officer at Recruit Training Command, Orlando, Florida, during the last week of December 1980. The significant Government evidence in the case was the testimony and cross-examination of the alleged victim, a seaman recruit in her fifth week of recruit training.

The case's evidentiary stance extracted from the alleged victim's testimony is best presented in summarized chronological order:

*31 December 1980*

0630: Seaman Recruit M (the alleged victim) and a Seaman Recruit C, also female, reported for duty on board the BLUEJACKET, a ship mock-up utilized in recruit training. The assigned duties of the two recruits were essentially that of phone watch and maintenance of classrooms and instructor materials during the training day. These duties were apparently normally rotated among recruit personnel. Both recruits were apparently completing the second day of a two-day assignment. The instructor staff assigned to the BLUEJACKET consisted of the appellant and a Chief Petty Officer W. Neither instructor was present on board at the time both recruits arrived and began preparing classrooms for instruction.

0730: Appellant arrived aboard BLUEJACKET.

0800: General conversation was engaged in by appellant and both recruits. Appellant took both recruits on tour of BLUEJACKET, and explained various training devices and areas.

Following the tour, at some point prior to 0900, appellant allegedly attempted to kiss Seaman Recruit M, while Seaman Recruit C was in the head. This incident allegedly occurred in the lounge area of the BLUEJACKET. Seaman Recruit M allegedly told appellant to "stop". The other female recruit, Seaman Recruit C, returned to the lounge area. Victim did not apparently mention incident to C.

0900: Seaman Recruit M left lounge area to go to the head. C remained in lounge area. Upon leaving stall inside that head facility, victim allegedly saw appellant standing inside the head, in front of the exit hatch. Appellant then allegedly partially disrobed, partially disrobed Seaman Recruit M, and effected a brief act of coitus while both parties were on their feet, with the victim, in her words "[in] a crouching position and the appellant positioned on top of me". Under cross-examination, Seaman Recruit M responded affirmatively to appellant's civilian counsel's description of this coital encounter as occurring entirely while both parties were on their feet, with appellant "on top" of her and with appellant's legs "over" her legs. A loud noise outside the head apparently terminated this encounter. According to M's testimony, the appellant uttered not a word prior to the alleged assault. He allegedly commented upon an early emission during the act. The only words apparently uttered by appellant following the alleged assault and prior to his departure from the head were to the effect, "don't come out for a minute". There is no evidence ascertainable from the record as to the location of Seaman Recruit C throughout this period, nor did Seaman Recruit C testify during the trial. The testimony of the alleged victim, however, indicated that C and the appellant were both in the lounge area when she returned from the head. Seaman Recruit M estimated that the total time which elapsed from the time she left the lounge area to go to the head, was allegedly assaulted by appellant in the head, washed her hands, and returned to the lounge where C and the appellant were located, encompassed "three to five minutes."

Seaman Recruit M stated that she neither resisted appellant's alleged advances physically, nor did she utter a word of remonstrance or protest throughout the entire encounter in the head, attributing her inaction to "fear" and "I just didn't know what to do. I didn't know what to say or anything."

Throughout the remainder of the morning, M apparently carried out her assigned duties aboard the BLUEJACKET, and made no mention of the incident to her fellow recruit, C, or Chief W who arrived onboard at approximately 1100.

1200: During the noon hour, according to testimony of the only other Government witness, Seaman Recruit S, the alleged victim appeared "upset, very nervous", but no conversation occurred. Seaman Recruit M returned to the BLUEJACKET following noon chow apparently without commenting on this incident to anyone.

1400: Seaman Recruit M continued to carry out her duties aboard the BLUEJACKET. Early that afternoon, she allegedly was called into the instructor's office by the appellant. At that time, both the appellant and Chief W were, according to M's testimony, present in the office. At this time the appellant supposedly made an obscene remark about the state of his genitalia to M and attempted to place her hand on his genital area. Seaman Recruit M asserted that she jerked her hand out of appellant's grasp and walked away. No testimony was offered by the Government from Chief W regarding this incident.

1900: Seaman Recruit S testified that Seaman Recruit M told her that evening in the barracks that she had been raped earlier that day in the head aboard the BLUEJACKET, and, at some point in time subsequent to that revelation, M told her that the last name of her assailant was that of the appellant. (This testimony was objected to at trial by appellant's defense counsel as inadmissible hearsay. The trial judge overruled the objection, citing Rule 801(d)(1)(B), Military Rule of Evidence. We find no abuse of discretion in the trial judge's apparent determination that a sufficient attack had been made upon M's in-court testimony to support admission of this testimony. *See generally*, McCORMICK'S HANDBOOK OF THE LAW OF EVIDENCE, 102–07 (2d ed. E. Cleary 1972).)

Approximately three weeks later: Seaman Recruit M reported the alleged incidents of 31 December 1980 to Navy authorities.

▮ Appellant was referred to trial by special court-martial on 12 May 1981. Prior to the initial Article 39(a), UCMJ, 10 U.S.C. § 839(a), session of that trial, appellant's detailed defense counsel submitted a written request to the convening authority for the attendance of Seaman Recruit C. That request was apparently orally denied. Appellant, at the 39(a) session of that trial, renewed his request for C. The military judge at that trial, Lieutenant Commander McPartlin, ruled that C's testimony and

presence was not material. The trial was ultimately continued, with Lieutenant Commander McPartlin replaced as military judge by Commander Studer. That trial ended as indicated above in mistrial.

At the second trial, appellant was tried before Lieutenant Commander McPartlin, the judge who had denied appellant's request for C at the first trial prior to being relieved by Commander Studer. Following the presentation of the case-in-chief, the following closing arguments were presented in sequence by opposing counsel.

Appellant's civilian defense counsel:

The government has chosen to rely entirely on the testimony of Seaman [M]. There were others that were available that could have been more helpful, could have been—that could have assisted you in deciding whether or not to believe [M]. Where is Seaman [C]? She was right there. She is the one that was in the lounge. They never called her to testify. Where is Chief Petty Officer [W]? He was in the room when Seaman [M] was to have had her hand placed on the crotch of Chief Goodyear . . . .

Appellant's civilian counsel continued his attack on the credibility of Seaman Recruit M.

In his rebuttal argument to the three officer members of the court, trial counsel made the following comments:

Defense's attempt to portray the government's being the only entity able to call witnesses in this case is unfounded. *He could have called Seaman Recruit [C],* Chief [W], or whatever. It is obviously, then, a determination by both the government and the defense that they had nothing further to offer at this proceeding, and according to Seaman Recruit [M's] statement, there was no reason for them to note anything unusual . . . .

(Emphasis added.)

Appellant now contends that he was materially prejudiced by trial counsel's rebuttal argument. We agree. We note that this argument was made by the same trial counsel who had apparently successfully ar-

gued, before the same judge, against appellant's request for the presence of C at the first trial. We are prepared to interpret this trial counsel's remarks as reflective of an excess of adversarial zeal rather than purposeful misstatement. It may be technically true that appellant did not submit a request for the presence of C at this trial and that, therefore, it could be persuasively argued that trial counsel's argument was proper rebuttal. *United States v. Maddela*, No. 77 1964 (NCMR 14 April 1978). *See United States v. McCrae*, 344 F.Supp. 942 (E.D.Pa.1972), *aff'd mem.*, 475 F.2d 1397 (3d Cir. 1973). The coincidental factual circumstances militate, however, against such facile analysis. Appellant had unsuccessfully requested the presence of Seaman Recruit C from both the convening authority and the same military judge at the first trial. He could reasonably foresee, therefore, that any further requests would be fruitless three weeks later.

Regardless, however, of the correctness of appellant's civilian defense counsel's decision not to raise the witness request issue at this trial, we are compelled to charge Government trial counsel with notice that C's presence was the subject of a prior, contested, and denied defense request, and that the absence of testimony from C was not the result of any discernible determination by both the Government and the defense that the witness had nothing "to offer"; a prosecutorial conclusion strongly inferring corroboration, rather than refutation, of Seaman Recruit M's testimony.

The posture of this case, made vividly clear in our examination of the record, was the essence of the contested criminal trial: the Government's evidence arrayed against appellant's reliance upon the presumption of innocence. Appellant had exercised his constitutional and statutory right to remain silent in the face of the Government's charges and chose to rely upon the law's requirement that the Government prove its charges beyond a reasonable doubt. Article 51, UCMJ, 10 U.S.C. § 851. We are not inclined, therefore, in such circumstances, to accept the doctrine of waiver because of trial defense counsel's failure to object. *See* Mil.R.Evid. 103(d).

Trial counsel's argument was presented in an atmosphere of insufficient evidentiary clarity and quality. We have exhaustively reviewed the testimony of Seaman Recruit M. That testimony avers a scenario in which the appellant, a senior petty officer with twenty years of active service, and assigned to an instructor billet involving limited and apparently brief prior contact with a female recruit, elects to confront that recruit in a public head facility aboard a ship training mockup. With another female recruit in close proximity outside the head, this confrontation supposedly proceeds with appellant, without uttering any threats, appeals, or other verbal advances, immediately and partially disrobing in front of the recruit, then approaching and partially disrobing her, and effecting coital penetration in a physical manner that seems, at the very least, to defy the imagination. This alleged assault is completed without a communication and specifically without a single word of protest, remonstrance, or even astonishment, and without even minimal physical resistance by a 20-year-old female in a setting involving no verbal or physical threats, and with apparent aid immediately available nearby. To complete the confrontation as described at trial, appellant supposedly responded to a noise outside the head, quickly dressed and departed the head, advising cautionary delay by the recruit in leaving the head. The recruit then supposedly "used the bathroom", washed her hands, and departed the head, finding appellant and the other female recruit sitting in the nearby lounge. The supposed estimated time for this entire alleged incident encompassed 3–5 minutes.

The Government apparently chose not to call Seaman Recruit C to corroborate the movements and absences of the parties during the alleged encounter. In fact, when appellant requested the physical presence of Seaman C as a material witness at the first trial of this case, that request was denied, as indicated earlier herein, by the convening authority and the trial judge.

We certainly find credible the contention by the Government at trial and now that

the unique circumstances of a newly enlisted recruit within the inherently alien atmosphere of recruit training and the intensive impact of petty officer authority inhibit the normal reporting of such abuses of authority. It can also be persuasively argued, in our view, that a female recruit might find it even more difficult to report such incidents to a command structure populated largely by male petty officers. But we must also observe that the alleged victim in this case was not assigned directly under the command authority of appellant. He was not her recruit company commander, nor was there any evidence that any continuing authority was exerted over the recruit by appellant. No evidence of any continuing coercion over the alleged victim over the three weeks following the incident was offered to explain the delay in reporting. Further, the age of the alleged victim militates, in our view, against an assertion of fear without some evidence of explicit or implicit threats or coercion prior to, during, or subsequent to the alleged offense. The record is devoid of any evidence of coercion by appellant or others during the three-week period subsequent to the alleged offense. Nor is there any evidence in the record to support any inference that the command structure was unwilling to positively respond to reports of such offenses.

■ This Court cannot carry out its statutory responsibilities based solely upon a recognition and support for desirable service policies and goals related to the protection of all members of the naval services, including junior female enlisted personnel, from the abuse of authority by their superiors. We must render our decisions on the facts and circumstances as they are presented in the trial record within the bounds of applicable law. Article 66(c), UCMJ, 10 U.S.C. § 866(c). Therefore, after an extensive examination of the evidence presented by the Government in this case, we are compelled to agree with appellant's assignment of error that he was materially prejudiced by trial counsel's closing argument in a case whose evidentiary stance was so precarious. *See United States v. Nelson,* 1 M.J. 235, 240 (C.M.A.1975); *United States*

*v. Gerlach,* 16 U.S.C.M.A. 383, 37 C.M.R. 3 (1966). We find equally dispositive, however, the insufficiency of the evidence presented by the Government. We agree with appellant's fifth assignment of error. We are aware that the three members of the court panel heard the testimony of Seaman Recruit M. We are always prepared to accord great weight to the responsibility of the triers of fact to observe and evaluate the credibility of a witness in the immediate forum of the courtroom. But in examining the testimony and evidence contained in the trial record, we find little that could be enhanced by oral and visual observation and assessment. We have weighed the Government's evidence against the required elements of proof related to the charged offense as well as all lesser included offenses. The findings of guilty rested clearly upon the testimony of Seaman Recruit M. We find that testimony singularly incredible and, specifically as presented at trial, insufficient to overcome appellant's presumption of innocence. In the exercise of our statutory power and responsibility to evaluate the factual evidence presented, we find the Government's factual evidence insufficient to support the findings of guilty beyond a reasonable doubt of the charged offense or of the lesser included offenses of assault and battery and simple assault.

Accordingly, the findings of guilty and the sentence are set aside and the charges are dismissed. All rights, privileges, and property by which appellant has been deprived by virtue of the findings and sentence so set aside will be restored.

Chief Judge CEDARBURG and Judge GORMLEY concur.