UNITED STATES

v.

**Brian C. McDONALD, Mess Management Specialist First Class (E–6), U.S. Navy.**

NMCM 200000635.

U.S. Navy–Marine Corps Court
of Criminal Appeals.

Sentence Adjudged 24 Sept. 1999.

Decided 22 Nov. 2002.

James A. Hernandez, Civilian Defense Counsel.

LT Deborah Mayer, JAGC, USNR, Appellate Government Counsel.

Before PRICE, Senior Judge, CARVER, and HARRIS, Appellate Military Judges.

PRICE, Senior Judge:

Contrary to his pleas, the appellant stands convicted of taking indecent liberties with his adopted daughter (two specifications), communicating indecent language to her, and soliciting her to commit carnal knowledge with him, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. A general court-martial consisting of officer and enlisted members sentenced him to confinement for five years, reduction to pay grade E–1, and a dishonorable discharge. The convening authority approved the sentence as adjudged, but, in an act of clemency, waived automatic forfeitures for six months in favor of the appellant's wife.

We have carefully considered the record of trial, the appellant's assignments of error,[1]

---

1. I. THE MILITARY JUDGE ERRED BY ALLOWING TRIAL COUNSEL'S VOIR DIRE QUESTIONS EIGHT AND NINE IN THAT THEY WERE IRRELEVANT AND PREJUDICIAL TO THE ACCUSED BY PLACING THE MEMBERS IN THE POSITION OF THINKING ABOUT THEIR OWN CHILDREN BEING ABUSED.

II. THE MILITARY JUDGE ERRED BY NOT GRANTING THE DEFENSE'S CHALLENGE FOR CAUSE OF CHIEF BAILEY AND CHIEF DUNWOODY.

and the Government's response. We conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

### Facts

The appellant had been married for about eight years when his wife was involved in a serious automobile accident. Due to her injuries, they were not able to have sexual relations for some time. During this period, the appellant gave T.M., his adopted 12-year-old daughter, some condoms and went into the bathroom while she was taking a bath and took a photograph of her. On a subsequent occasion, the appellant again came into the bathroom while she was taking a bath and tried to take a photograph of her. The appellant also left a story titled "Daddy and Me" in the bathroom T.M. normally used. The story described sexual relations between a father and his daughter. Finally, the appellant wrote a note telling T.M. that he wanted to be her first sexual experience and gave it to her. She read it and started crying. The appellant then took it from her and threw it away. The appellant never touched T.M. in a sexual manner. The appellant was charged with committing all of the above-described acts, except for leaving the "Daddy and Me" story in the bathroom.

### *Voir Dire* and Challenges

The appellant contends that the military judge committed prejudicial error by allowing the trial counsel to pose certain questions to the members during *voir dire* and by denying two defense challenges for cause. We disagree.

III. THE MILITARY JUDGE ERRED BY NOT SUSTAINING THE DEFENSE'S OBJECTIONS TO THE PROSECUTION'S INTRODUCTION OF UNCHARGED MISCONDUCT OF THE ACCUSED ALLEGEDLY LEAVING A PORNOGRAPHIC STORY IN THE CHILDREN'S BATHROOM.

IV. THE MILITARY JUDGE ERRED BY NOT SUSTAINING THE DEFENSE'S OBJECTION OR GRANTING THEIR MOTION TO PREVENT THE INTRODUCTION OF UNCHARGED MISCONDUCT EVIDENCE REGARDING ALLEGED ACTS BY THE ACCUSED WITH HIS SISTER. . . .

■ The military judge permitted both sides to submit proposed *voir dire* questions. The questions were then discussed in an Article 39(a), UCMJ, session. The trial counsel (TC) submitted a total of 19 questions, with the first three to be asked during group *voir dire* and the remainder during individual *voir dire*. Questions number eight and nine are the subject of this assignment of error:

8. Have you ever discussed with your children what they should do if someone propositions them in an inappropriate way? If so, what have you suggested for them to do?

9. What do you think a child would do if an adult solicits them for sex? What do you think a child would do if an adult takes indecent liberties with them?

Appellate Exhibit XXIV. The trial defense counsel (TDC) objected on grounds of relevance and prejudice, because the questions would cause the members to put their own children in place of the alleged victim. The military judge said that he thought number eight "is more favorable to the defense than it is to the government, because it would certainly indicate that you have a panel member who is concerned about inappropriate behavior, but—I'm going to ask Number 8. I think it goes to the issue of bias." Record at 94. In later comments, the military judge expanded on that notion, saying he thought that exploring the general views of members as to whether they would expect a particular reaction from a child victim would provide a possible basis for exercise of a peremptory challenge. When the TDC complained that the military judge was allowing the Government to "create their case around *voir dire*," the military judge said he was not allowing

V. THE MILITARY JUDGE ERRED BY ALLOWING THE ACCUSED'S PSYCHIATRIST, COMMANDER PETER K. TRUE, TO TESTIFY ABOUT ADMISSIONS BY THE ACCUSED GIVEN TO THE COMMANDER DURING COUNSELING OVER DEFENSE'S OBJECTIONS.

VI. THE MILITARY JUDGE ERRED BY NOT DECLARING A MISTRIAL WHEN TRIAL COUNSEL THREE TIMES COMMENTED ON THE ACCUSED EXERCISING HIS FIFTH AMENDMENT RIGHT TO REFUSE TO TESTIFY.

the Government to "put their evidence in during *voir dire,*" then ruled that question number 18 would not be allowed.[2] The military judge partially sustained the TDC's objection to question number nine, ruling that the second part would require the members to know what "indecent liberties" meant, but allowed the Government to ask the first part of that question. He also allowed the TC to ask question number eight.

In his brief, the appellant cites *United States v. Wood,* 18 C.M.A. 291, 40 C.M.R. 3, 1969 WL 5996 (1969), in support of the argument that the trial counsel's questions improperly encouraged the members to put their own children in the alleged victim's place. In *Wood,* the accused was charged with taking indecent liberties with three boys in the Boy Scout troop of which he was scoutmaster. During argument on sentencing the prosecutor asked the members if they would want the accused to have access to their own sons. The Court found the argument to be an improper appeal to the members to set aside objectivity and substitute personal interests. However, the majority concluded that the accused suffered no prejudice, because the issue had been broached and resolved in *voir dire* with members who had children in scouting.[3] The Court also found support for its conclusion in the relative lenience of the sentence.

We believe that the appellant's reliance on the *Wood* case is misplaced. That case was about argument on sentence, not *voir dire.* Moreover, the fact that some of the members had children who were involved in scouting was "fully ventilated during the challenge procedure," a matter that our superior Court obviously thought was appropriate material for *voir dire. Wood,* 18 C.M.A. at 297, 40 C.M.R. at 9.

The military judge has broad discretion in controlling the content and procedure of examination of members prior to the exercise of challenges. The primary purpose of *voir dire* is to obtain information for the intelligent exercise of challenges. RULE FOR

COURTS-MARTIAL 912(d), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.), Discussion. The standard of review for the military judge's ruling is abuse of discretion. *United States v. Dewrell,* 55 M.J. 131, 136 (2001). "Generally, the appellate courts will not find an abuse of discretion when counsel is given an opportunity to explore possible bias or partiality." *United States v. Belflower,* 50 M.J. 306, 309 (1999).

These and most other pertinent cases address scenarios where the defense desired to conduct case-specific examination of the members, but the military judge did not permit them to do so. Here, we have the Government who wished to conduct such *voir dire* against the objection of the defense. Whether it is the Government or the accused, we believe that the aforementioned rules governing the content of *voir dire* apply equally. In other words, the TC had as much right to obtain information for the intelligent exercise of challenges as the TDC.

That does not mean that the trial counsel could willy-nilly question the members, about irrelevant matters or attempt to introduce evidence or argument under the pretext of *voir dire.* We note that the military judge was sensitive to these concerns in addressing objections to the Government's proposed *voir dire.* Including question number nine, the military judge sustained defense objections to part or all of four separate questions. As noted previously, the military judge warned the trial counsel that he would not allow her to put this evidence in during *voir dire.*

In our review of the actual questioning of the members, we note that the military judge incorporated every requested defense question in his individual *voir dire* and allowed the defense extensive opportunities for follow-up questioning. We also note that the TDC himself chose to question members about their own children and whether their children would enter into their deliberations. Taking all of these matters into account, and measured against the discretion enjoyed by

---

2. That quotation read: "Were you aware that it is not unusual for a child to wait before reporting a crime of a sexual nature having been committed against them?"

3. That this part of the decision was later overruled, *United States v. Shamberger,* 1 M.J. 377, 379 n. 2 (C.M.A.1976), does not detract from our analysis of *Wood.*

the military judge in these matters, we cannot say that there was an abuse of discretion in allowing these questions. We hold that he properly allowed the trial counsel to explore possible bias among the members to assist in the intelligent exercise of challenges.

In a related assignment of error, the appellant asserts that the military judge erred by not granting defense challenges for cause against Chief Dunwoody and Chief Bailey. Specifically, the appellant contends that their statements during *voir dire* manifest an inflexible or biased attitude towards sentencing.

The appellant quotes Chief Dunwoody's responses to questions about his sentencing philosophy as follows: "I can't answer that," and "I am not sure what creates someone like that." Appellant's Brief of 21 Feb 2001 at 5. He also points out Chief Dunwoody's feelings about a previous court-martial experience in which Chief Dunwoody served as a bailiff. In that court-martial, the accused chief petty officer was convicted of sexual harassment. Chief Dunwoody opined that his fellow chief petty officer failed to uphold Navy core values of honor, courage, and commitment.

We now quote the pertinent portions of the *voir dire* of Chief Dunwoody:

MJ: Do you believe that a person is more likely to sexually abuse a stepchild than one's natural child?

MBR: I don't know; I guess. I really don't understand that kind of thinking, so.

MJ: So you would maybe, maybe not. You don't know.

MBR: Maybe not.

MJ: When you say you really don't understand that kind of thinking—

MBR: What would create someone to do anything like that.
 * * * *

TC: How did you feel about that case? Did you think the Chief was being treated unfairly?

MBR: No, ma'am.

TC: All right. Why is that?

MBR: Well we, you know, all sailors have a—we all go by honor, courage and commitment. The Chief—I knew the Chief pretty well. Matter of fact he was at my initiation, my pinning ceremony. I looked up to him. The court found him guilty, and I believe the court was right on the button, and it kind of was a disappointment and he couldn't handle the honor, courage and commitment.
 * * * *

TC: Would you let your experience in that case have any effect on this one at all?

MBR: I don't see where it would. I don't see where it would have any difference. I don't know. The only difference I can see is that in that case it was a—the person that was sexually harassed was in her forties and this is a child. That's the difference I see.
 * * * *

ADC: Now in determining the punishment, would you be able to consider the full range meaning no confinement at all just having a conviction being the punishment. Would you be able to consider that still?

MBR: Of course.

Record at 266, 271–74. After considering the defense's causal challenge based on sentencing inflexibility, the military judge announced his ruling:

> I'm going to—my sense is that there was nothing said by Chief Dunwoody that causes this court concern that he would bring any type bias into this court-martial that might be adverse to the defense. I think his comment that he can't understand what would cause somebody to do something like that, I think if you're the type of person that doesn't believe in sexually molesting your child, you have a hard time understanding why somebody would sexually molest a child. That doesn't necessarily mean that you would believe the child and, in fact, I gather that he's going to listen to the evidence and make a fair and impartial judgment, and that I believe that he indicated that he was able to consider the full range of punishments, including no punishment to the maximum. So I'm going to—I don't see any sentencing inflexibility on his part. So I'm going to deny that challenge for cause.

Record at 322–23.

██ A military judge should take a liberal approach to granting challenges for

cause. *United States v. Dale*, 42 M.J. 384, 386 (1995). A member of a court-martial shall be excused in cases of actual bias or implied bias. *United States v. Napoleon*, 46 M.J. 279, 282–83 (1997). Our superior Court recently summarized the tests for actual and implied bias:

> "The test for actual bias is whether any bias 'is such that it will not yield to the evidence presented and the judge's instructions.'" *Napoleon*, 46 MJ at 283, quoting *United States v. Reynolds*, 23 MJ 292, 294 (CMA 1987). "While actual bias is reviewed through the eyes of the military judge or the court members, implied bias is reviewed under an objective standard, viewed through the eyes of the public." *Id.*, quoting *[United States v.] Daulton*, [45 M.J. 212, 217 (1996)] *supra*. The focus "is on the perception or appearance of fairness of the military justice system." *Dale*, 42 MJ at 386. At the same time, this Court has suggested that the test for implied bias also carries with it an element of actual bias. Thus, there is implied bias when "most people in the same position would be prejudiced." *United States v. Armstrong*, 54 MJ 51, 53–54 (2000), quoting *United States v. Warden*, 51 MJ 78, 81 (1999); *United States v. Smart*, 21 MJ 15, 20 (CMA 1985). This Court has also determined that when there is no actual bias, "implied bias should be invoked rarely." *United States v. Rome*, 47 MJ 467, 469 (1998).
>
> Given the factual underpinning for testing actual bias, we review a military judge's findings regarding actual bias for an abuse of discretion. *Napoleon*, 46 MJ at 283. On the other hand, issues of implied bias, which entail both factual inquiry and objective application of legal principle, are reviewed under a less deferential standard. *Armstrong*, 54 MJ at 54, quoting *Warden*, *supra*.

*United States v. Wiesen*, 56 M.J. 172, 174–75 (2001). When compared with these tests, we conclude that the military judge did not abuse his discretion in denying the challenge for cause against Chief Dunwoody. While the appellant claims the Chief showed sentencing inflexibility, we think that, taken as a whole, this member clearly expressed an ability and willingness to follow the military judge's instructions and specifically, to defer any decision on an appropriate sentence until all the evidence was in. The appellant did not persuade the military judge that Chief Dunwoody was biased on sentencing, and he has not persuaded us either. We find no basis for a conclusion of actual bias. In view of that conclusion, we do not see this as one of those rare occasions to invoke implied bias.

■ The challenge for cause against Chief Bailey is a closer issue. The appellant argues that the Chief showed some hesitance about his ability to separate his feelings for his two teenage daughters from his deliberations on the sentence. We now quote the pertinent portions of his *voir dire:*

MJ: If you were—well, if you're chosen here, you're going to have to listen to the testimony of a child talk about sexual matters. How do you feel about that?

MBR: It would be tough sir, but I could do it.

\* \* \* \*

DC: The alleged victim, the girl that made the allegations in this case is about the same age [as your 14–year–old and 11–year–old daughters]. How do you feel about that?

MBR: Well, once again, sir, I know in times like these I would have to listen to both sides of the story and exactly find out, you know why all this came about.

DC: Would the fact that you have daughters that age make you in any way more sympathetic to this particular victim if she was around the same age?

MBR: Yes, sir.

\* \* \* \*

DC: You said yes. How so?

MBR: Basically, because, you know, an adult and a child and an adult using and influencing a child to do things. But I would have to, like I say again, I'd have to listen to both sides of the story.

DC: I guess my question is would you be more likely to believe this particular victim because she's about the same age of your daughters?

MBR: I don't know, sir. I would, like I said, I would have to listen to the

story, have to listen to what's been said.

DC: So just because she's the same age as your daughters wouldn't make any difference.

MBR: No, sir.

DC: How about, let's assume for a moment that the court finds Petty Officer McDonald guilty. Would the fact that you have daughters about the same age factor into your decision on what an appropriate sentence?

MBR: Yes, sir.

DC: Yes, sir?

MBR: Yes, sir.

DC: How so?

MBR: You know, it's because a situation like this incident happens and I would have to be non-biased, first of all, okay? So, like I say, I need to listen to what's going on and what's happening and what has happened before I can honestly make a good determination.

DC: And are we talking about on sentencing as well as on findings?

MBR: Yes, sir.

DC: So you would be able to separate your daughters and listen to the facts regarding the sentence as well?

MBR: I would try to, sir.

DC: Do you think you could?

MBR: Yes, sir. I think I could.

Record at 295, 299–301. The military judge was in the courtroom and saw and heard the Chief during this *voir dire*. We were not there. With that in mind, we now quote his ruling on the challenge for cause:

Well, I suppose that if the members find that

the charges occurred and the child was molested that one would have some sympathy

for the victim of the crime. I don't think that one is not supposed to be sympathetic if one believes that the crime occurred. I don't believe that that's a—I don't believe that he would inappropriately punish this accused by virtue of sympathy from—I think he just feels that when one's a victim of a crime, one deserves some compassion and sympathy, not that he believes at this stage that the offense in fact occurred or has a bias to indicate that the offenses in fact occurred, but I would suspect if you

would ask any common sense person, you know, do you have sympathy for the victim of a crime or compassion for the victim of a crime, they would all say yes, and I don't think that he's going to be more sympathetic simply because he has his own daughters.

Record at 323. The TDC responded, "That is what he told me, sir. He said he would be more sympathetic because he had daughters." Record at 324. The military judge closed the discussion with: "Well, I don't believe that forms a basis for challenge in this case, and I'm going to deny it." *Id.*

As we consider whether the military judge abused his discretion, we make the following observations. First, Chief Bailey obviously pulled no punches during *voir dire*. His answers and comments were honest, thoughtful, and responsive. Second, while some of his answers and comments are confusing and arguably contradictory, we must remember that he was placed in the position of trying to answer some difficult questions off the cuff. We are not surprised that a member who is not trained in the law and not normally involved in the litigation of child sexual abuse cases might have some difficulty responding to two lawyers and a judge as to questions about such an emotional subject. Third, Chief Bailey said that he could follow all the instructions of the military judge as to findings and sentencing. Specifically, he promised that he would consider all matters in extenuation and mitigation and keep an open mind regarding the sentence until all the evidence was in and he was instructed on the law of sentencing. He also said that he would consider the entire range of punishments, including no punishment. Finally, he denied having any thoughts or feelings that might affect his ability to adjudge a completely fair, impartial and appropriate sentence.

That having been said, we note that, when pressed, Chief Bailey candidly admitted that he could not ignore the fact that he was a father of teenage daughters and that he was not positive that he could "separate [his] daughters" from his deliberations on the sentence. Record at 301. However, the experienced military judge thoughtfully considered

this and all the other comments during Chief Bailey's *voir dire* and had the benefit of observing his demeanor and listening to the tone and inflections of his voice. Based on the record before us, we are not persuaded that Chief Bailey evidenced actual bias, nor are we persuaded that this is one of those rare occasions when implied bias applies. We hold that the military judge did not abuse his discretion in denying the challenge for cause against this member.

### Uncharged Misconduct

■ The appellant next contends that the military judge erred in admitting evidence of prior bad acts by the appellant. Specifically, he argues that the military judge erroneously overruled the TDC's objection to testimony that the appellant left a pornographic story in the bathroom that T.M. used. He makes the same argument with respect to evidence that the appellant molested his stepsister approximately 20 years before trial. We hold that the military judge did not err in admitting this evidence.

The TDC moved *in limine* to preclude the trial counsel from offering any evidence that the appellant left the "Daddy and Me" story in T.M.'s bathroom. The TC argued that the evidence was admissible under Military Rule of Evidence 404(b), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.), to show the appellant's intent and plan to have sexual intercourse with T.M. After hearing testimony from T.M. and her mother, the military judge analyzed and admitted the evidence. In his analysis, he applied the appropriate test under Mil. R. Evid. 404(b) and conducted an evaluation under Mil. R. Evid. 403.

We review a military judge's decision to admit evidence against a standard of abuse of discretion. *Dewrell*, 55 M.J. at 137; *United States v. Acton*, 38 M.J. 330, 332 (C.M.A. 1993). In *United States v. Miller*, 46 M.J. 63 (1997), our superior Court considered a similar assignment of error and offered the following guidance:

An appellate court should not overturn a military judge's decision to admit evidence under Mil.R.Evid. 403, Manual for Courts-Martial, United States (1995 ed.), absent a clear abuse of discretion. *United States v. Lake*, 36 MJ 317, 322 (CMA 1993). "To

reverse for 'an abuse of discretion involves far more than a difference in . . . opinion . . . . The challenged action must . . . be found to be "arbitrary, fanciful, clearly unreasonable," or "clearly erroneous" in order to be invalidated on appeal.'" *United States v. Travers*, 25 MJ 61, 62 (CMA 1987), quoting *United States v. Yoakum*, 8 MJ 763 (ACMR 1980), *aff'd on other grounds*, 9 MJ 417 (CMA 1980).

Mil.R.Evid. 404(b) provides:

*Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided, that upon request by the accused, the prosecution shall provide reasonable notice in advance of trial, or during trial if the military judge excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

The first sentence of Mil.R.Evid. 404(b) prohibits propensity evidence. Then the rule states that evidence of "crimes, wrongs, or acts" is admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident," rather than for proof of character.

"Accordingly, the sole test under Mil. R.Evid. 404(b) is whether the evidence of the misconduct is offered for some purpose other than to demonstrate the accused's predisposition to crime and thereby to suggest that the factfinder infer that he is guilty, as charged, because he is predisposed to commit similar offenses." *United States v. Castillo*, 29 MJ 145, 150 (CMA 1989).

In order to be admissible, evidence of uncharged misconduct must: (1) reasonably support a finding that an accused committed prior crimes, wrongs, or acts; (2) make a fact of consequence more or less probable; and (3) possess probative value that is not substantially outweighed by its danger for unfair prejudice. *See*

*United States v. Reynolds*, 29 MJ [105,] 109 [(C.M.A.1989)].

*Miller*, 46 M.J. at 65.

In his ruling, the military judge made findings of fact that, based on the evidence, the members could reasonably find that the appellant committed the act in question. He also found that the evidence was probative as to the appellant's intent and plan to condition T.M. to consent to have sexual intercourse with him. Finally, he concluded that the probative value was not substantially outweighed by any danger of unfair prejudice to the appellant. We see no reason to disturb the careful and well-reasoned decision of the military judge.

■ The TDC also moved *in limine* to preclude the TC from offering evidence that the appellant had molested his stepsister some 20 years before trial. The TC proffered the following evidence. When the stepsister was about eight years old and the appellant was about 13 years old, the appellant exposed his penis to her while babysitting her. Later, he showed her a pornographic men's magazine. The magazine depicted a fairy masturbating a man. He said that he wanted her to do that to him. After these incidents, the appellant warned her not to tell her mother.

In our analysis, we first note that the military judge ruled on the admissibility of this evidence without having heard the stepsister testify in an Article 39(a), UCMJ, session. Rather, the TC made an oral proffer of her testimony. This does not detain us, however, because the TDC explicitly concurred in that procedure in the interests of judicial economy. We also note that when she testified before the members, her testimony matched the proffer. However, in her testimony, the stepsister added that he also had her masturbate him repeatedly, remove her clothes below the waist on one occasion, and he touched her private parts.

The military judge found that the proffered evidence would reasonably support a finding by the members that the appellant committed the acts with the stepsister. In determining whether that evidence made a fact of consequence more or less probable, the military judge considered the TC's assertion that it was highly probative of the appellant's intent and plan, just as with the "Daddy and Me" evidence. After observing that there were several similarities in the appellant's actions with the stepsister and the charged actions with T.M., the military judge ruled that sufficient probative value existed.

It was the last step in the analysis that prompted the most discussion on the record. The TDC argued that if this evidence was admitted, the appellant would undoubtedly suffer prejudice in sentencing, because the members would consider the appellant's activities as a teenager, including actual indecent touching. The military judge responded that he was most concerned with the potential impact on deliberations on findings, for the time being, particularly since he had no idea if there would be a conviction on any specification. He went on to say that if there was a conviction, he would instruct the members not to consider the evidence in fashioning an appropriate sentence. In fact, such an instruction was given to the members, without objection.

The military judge was satisfied that the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the members. So are we. We hold that the military judge did not abuse his discretion in admitting this 20–year–old evidence of uncharged misconduct. Our superior Court's decision and reasoning in *United States v. Tanksley*, 54 M.J. 169, 173–177 (2000), is instructive. In *Tanksley*, evidence of uncharged sexual abuse culminating in rape of an older daughter was admitted in support of charged indecent liberties committed against Captain Tanksley's youngest daughter. The uncharged abuse and rape occurred more than 15 years before the charged incident of indecent liberties. Unlike the youthful appellant in this instance of uncharged misconduct, Captain Tanksley was an adult when he raped his oldest daughter. Another distinction is that the prior abuse in *Tanksley*, although technically not charged, was nevertheless included in the charge sheet as part of the specifications alleging false official statements. As such, evidence of the prior

abuse was essential in the Government's case. Here, the prior misconduct did not appear on the charge sheet in any form. Thus, evidence of that misconduct was not essential in the Government's case. Those distinctions notwithstanding, we adopt our superior Court's reasoning in *Tanksley* in resolving the similar issue in this case.

Writing for the Court of Appeals for the Armed Forces, Chief Judge Crawford started her analysis by stating that Mil. R. Evid. 404(b) is one of inclusion. Next, she explained that "this evidentiary rule does not have a temporal yardstick by which a trial judge is to gauge the evidentiary value of the other crimes, wrongs, or acts." *Tanksley*, 54 M.J. at 175. We read that to mean that distance in time, *per se*, may, but does not necessarily preclude the admissibility of the uncharged misconduct. Rather, "[t]he nub of the matter is whether the evidence is offered for a purpose other than to show an accused's predisposition to commit an offense." *Id.* We conclude that the military judge's ruling properly incorporates this rationale.

■ Even assuming *arguendo* that the military judge erred in allowing the Government to place this 20–year–old evidence before the members, we conclude that it was harmless error. We review *de novo* whether such an error was harmless. *United States v. Alameda*, 57 M.J. 190, 199 (2002)(citing *United States v. Grijalva*, 55 M.J. 223, 228 (2001)). In evaluating potential prejudice from erroneous evidentiary rulings, we consider the following factors: (1) the strength of the Government's case; (2) the strength of the defense case; (3) the materiality of the evidence in question; and (4) the quality of the evidence in question. *United States v. Kerr*, 51 M.J. 401, 405 (1999)(citing *United States v. Weeks*, 20 M.J. 22, 25 (C.M.A.1985)).

■ In conducting a harmless-error analysis, we must first determine whether the error is of constitutional magnitude. For constitutional error, we must be satisfied beyond a reasonable doubt that the error was harmless. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). For non-constitutional error, we must be satisfied that "the judgment was not substantially swayed by the error." *Kotteakos v.*

*United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). If we are not satisfied, or if we are "left in grave doubt, the conviction cannot stand." *Id.*

While the parties have not briefed the issue, on the facts of this case, we may safely proceed *sua sponte* to determine whether the error is of constitutional magnitude. We conclude that the admissibility of uncharged misconduct under Mil. R. Evid. 404(b) does not invoke any constitutional protection. Rather, it is rooted in evidentiary considerations of basic relevance.

■ Assuming, without deciding, that the judge erred in admitting this 20–year–old evidence, were the members "substantially swayed" by the error? We think not. Before the disputed evidence was ever presented, the Government offered overwhelming evidence that the appellant was guilty as charged, including the appellant's written pretrial statement, his oral admission to his wife, T.M.'s persuasive testimony, and corroboration from Dr. True and T.M.'s brother. The defense presented no evidence. We are convinced that when the members retired to deliberate, the 20–year–old evidence had little impact on the findings.

As to potential impact on the sentence, we previously noted that the military judge instructed the members to disregard the uncharged misconduct. Members are presumed to follow the military judge's instructions. *United States v. Jenkins*, 54 M.J. 12, 20 (2000). Moreover, we note that there is no assignment of error as to the appropriateness of the sentence. In conclusion, we hold that any error by the military judge in admitting the stepsister's testimony was harmless.

### Psychotherapist–Patient Privilege

■ The appellant argues that the military judge erred in allowing the appellant's military psychiatrist, Commander Peter K. True, Medical Corps, U.S. Navy, to testify concerning admissions made by the appellant during treatment and counseling. Specifically, he contends that the military judge erred in overruling the TDC's objection based on *Jaffee v. Redmond*, 518 U.S. 1, 116 S.Ct.

1923, 135 L.Ed.2d 337 (1996), and Mil. R. Evid. 501(a)(4). We disagree.

*Jaffee* recognized a federal psychotherapist privilege, thus resolving a split among federal courts on that issue. ("Because we agree with the judgment of the state legislatures and the Advisory Committee that a psychotherapist-patient privilege will serve a 'public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth,' *Trammel* [*v. United States*], 445 U.S. [40,] at 50, 100 S.Ct. 906, 63 L.Ed.2d 186 [(1980)], we hold that confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence."). Prior to *Jaffee,* our superior Court did not recognize such a privilege. *United States v. Mansfield,* 38 M.J. 415 (1993). On 6 October 1999, about two weeks after this court-martial was adjourned, the President adopted Mil. R. Evid. 513. This new rule promulgated a limited psychotherapist privilege for all qualifying "communications made after 1 November 1999." Exec. Order No. 13140, § 4(b), 3 C.M.R. 230 (1999). Since all statements made by the appellant to Dr. True were made before 1 November 1999, they were not protected by the new rule.

The appellant argues, however, that the *Jaffee* decision established the relevant rule of law applicable to his statements to Dr. True. We disagree. This argument was heard and rejected by our superior Court in *United States v. Rodriguez,* 54 M.J. 156 (2000), *cert. denied,* 531 U.S. 1151, 121 S.Ct. 1094, 148 L.Ed.2d 967 (2001). The assignment of error has no merit.

### Mistrial

The appellant contends that the military judge erred in not declaring a mistrial based on comments made by the trial counsel during argument on findings. We disagree.

During the TC's initial argument on findings, she mistakenly stated that the appellant had testified regarding the photos and condoms. In fact, the appellant never took the stand or presented any evidence to the members. The military judge alertly interrupted the TC's argument, called for an Article 39(a), UCMJ, session, then asked the TDC if he had any objection or desired a curative instruction. The TDC did not object, believing that the TC had used the word "admitted" rather than "testified." Record at 683. Hoping to avoid highlighting the issue, the TDC asked the military judge not to give an instruction. After the TC apologized and gave an assurance it would not happen again, the military judge terminated the Article 39(a), UCMJ, session, brought the members back in, and allowed the TC to proceed. No curative instruction was provided at this juncture. Later in this same argument, the TC made the following comments:

> Now I want to go back just for a short moment for the condoms.... It goes to the fact of his intent to gratify his sexual desires when he handed her those condoms. And defense counsel in opening statement said, "Well, we all know that in today's day and age, 12 year old girls, they need condoms." ... You heard no evidence that [T.M.] was sexually active. No evidence whatsoever.... No evidence that she was sexually active.

Record at 688. The TDC made no objection to these comments, but proceeded with his own argument on findings. During the TC's closing argument on findings, she said:

> In order not to believe [T.M.], members, you have to believe [TDC is] saying [T.M.] and [the appellant's wife] are lying about "Daddy and Me". Did you hear any evidence they have an intent to lie or a desire to lie? Did you hear anything about that at all? ... You heard no evidence [the appellant's wife] or [T.M.] were lying about it.

*Id.* at 702–03. Later in the argument, the TC again said, "There's no evidence here that anyone made up 'Daddy and Me.' There is no evidence of that." *Id.* at 704. Immediately after the TC finished the argument, the following ensued:

> DC: Your Honor, I say this when Lieutenant Gregory was complete but I counted twice Lieutenant Gregory referred to the fact that I was required to convince the jury of something.
>
> TC: 39(a) session, Your Honor, please.

DC: **I'm going to ask for a limiting instruction.** I found—I object because she also said there's no evidence "Daddy and Me" was made up and that the defense was expecting them to believe the defense's conjecture. I would just ask the court to reiterate there is no burden on the defense to the members.

*Id.* at 705 (emphasis added). The military judge promptly reiterated the standard instruction on presumption of innocence, the standard of proof, and the burden of proof.[4] The TDC then thanked the military judge for the instruction and, notably, made no motion for mistrial.

 The trial counsel may not comment, directly or otherwise, that the appellant failed to testify. *Griffin v. California*, 380 U.S. 609, 615, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). Furthermore, the trial counsel may not comment on an accused's failure to produce witnesses in his behalf. *United States v. Mobley*, 31 M.J. 273, 279 (C.M.A. 1990). However, the prosecution may comment on the failure of the accused to refute Government evidence or to support his own claims. *United States v. Webb*, 38 M.J. 62, 66 (C.M.A.1993)(citing *United States v. Coven*, 662 F.2d 162, 171 (2d Cir.1981)). A constitutional violation occurs only if either: (1) the accused alone has the information to contradict the Government's evidence referred to; or (2) the jury naturally and necessarily would interpret the summation as a comment on the failure of the accused to testify. *Webb*, 38 M.J. at 66.

The military judge may, as a matter of discretion, declare a mistrial when such action is manifestly necessary in the interest of justice because of circumstances arising during the proceedings which cast substantial doubt upon the fairness of the proceedings.

R.C.M. 915(a). "Mistrial [is] a 'drastic remedy' that the military judge should order only when necessary to 'prevent a miscarriage of justice.'" *United States v. Taylor*, 53 M.J. 195, 198 (2000). The decision to grant a mistrial lies within the sound discretion of the military judge. We do not reverse that

decision absent clear evidence of abuse of discretion. *Id.*

 The appellant relies on our decision in *United States v. Goodyear*, 14 M.J. 567 (N.M.C.M.R.1982), contending that the military judge should have ordered a mistrial. In *Goodyear*, the appellant, a chief petty officer, was tried twice on the same charges involving a female seaman recruit, [M]. In the first trial, the accused exercised his right to remain silent and presented no evidence. The trial counsel made these comments in his closing argument on findings:

What motive does Seaman Recruit [M] have to lie? She didn't know the chief; she didn't have to say—to make a charge like this to get out of work for the chief.... There's absolutely no motive which has been proferred by the defense to show that Seaman Recruit [M] may have told a falsehood to this court.

*Id.* at 569. The defense moved for a mistrial. The military judge granted the motion and observed: "I find the remarks of counsel to be flagrant, unprofessional and unethical. This is not the first time I have had to caution counsel." *Id.* at 570. We found "no abuse of the trial judge's discretion in that decision and ruling." *Id.* at 569. However, our holding addressed the issues of whether the accused could be prosecuted a second time and whether the trial counsel's similar argument on findings in the second trial, when viewed in light of the Government's evidence, materially prejudiced the accused. In the second trial, the Government relied exclusively on the testimony of the alleged victim. The defense presented no evidence on the merits. In argument on findings, the civilian defense counsel attacked the Government's case by pointing out the absence of any corroborating eyewitnesses to the offenses. The trial counsel then argued, in closing that the defense could have called the same witnesses. The defense counsel made no objection, much less motion for mistrial. We held that the evidence was insufficient to sustain the conviction and also concluded that the accused was "materially prejudiced by trial counsel's closing argument in a case

---

4. The military judge had given the substantive instructions on findings to the members prior to

arguments. He then gave the procedural instructions on findings after arguments.

whose evidentiary stance was so precarious." *Id.* at 574.

We believe that *Goodyear* may be distinguished from the appellant's case. In that case, the question of the appropriateness of the military judge's decision to declare a mistrial in the first court-martial was never squarely addressed. Our observation that the military judge did not abuse his discretion was mere dictum. Even if it might be regarded as part of the holding in the case, it is plain that the trial counsel was guilty of prosecutorial misconduct in making his closing argument in the first trial, thus justifying the drastic remedy of a mistrial. Moreover, the defense moved for a mistrial, thus indicating the extreme prejudice suffered by the accused.

Here, we have no such plain record of unethical conduct on the part of the trial counsel. While her argument was improper, we borrow our language from analysis of the second *Goodyear* trial to describe the legal impact: "We are prepared to interpret this trial counsel's remarks as reflective of an excess of adversarial zeal rather than purposeful misstatement." *Goodyear*, 14 M.J. at 573. Apparently, the appellant's counsel had the same impression of her argument, since he declined to move for a mistrial. Rather, he was obviously satisfied with the military judge's curative instructions. We find no prejudice to the appellant.

### Conclusion

The findings and sentence, as approved on review below,[5] are affirmed.

Judge CARVER and Judge HARRIS concur.

---

5. We note that the military judge ordered Appellate Exhibits XI and XII be attached to the record under seal. Record at 55. These exhibits consist of civilian records of psychological treatment provided to the appellant's adopted daughter, T.M., the 12–year–old victim in this case. However, when the record of trial was received at this court, we discovered that those exhibits were not sealed. We hereby direct the Clerk of Court to seal those exhibits, as well as Appellate Exhibit XIII, which contains similar material.