UNITED STATES, Appellee

v.

Brian C. MCDONALD, Mess Management
Specialist First Class
U.S. Navy, Appellant

No. 03-0211

Crim. App. No. 200000635

United States Court of Appeals for the Armed Forces

Argued November 19, 2003

Decided May 5, 2004

CRAWFORD, C.J., delivered the opinion of the Court, in
which GIERKE, EFFRON, BAKER, and ERDMANN, JJ., joined.

Counsel

For Appellant: Lieutenant Rebecca S. Snyder, JAGC, USNR
(argued).

For Appellee: Lieutenant Lars C. Johnson, JAGC, USNR (argued);
Colonel Michael E. Finnie, USMC (on brief); Commander R. P.
Taishoff, JAGC, USN, and Lieutenant Ross W. Weiland, JAGC, USNR.

Military Judge: R. J. Kreichelt

**THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION**.

Chief Judge CRAWFORD delivered the opinion of the Court.

Contrary to his pleas, Appellant was convicted of two specifications of committing indecent liberties with a child, one specification of indecent language toward the child, and one specification of soliciting sex with a child, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 (2000). The convening authority approved the sentence of a dishonorable discharge, five years' confinement, and reduction to the lowest enlisted grade. The Court of Criminal Appeals affirmed the findings and sentence. United States v. McDonald, 57 M.J. 747 (N-M. Ct. Crim. App. 2002). We granted review of the following issues:

> I. WHETHER THE LOWER COURT ERRED BY FINDING EVIDENCE OF UNCHARGED ACTS THAT APPELLANT ALLEGEDLY COMMITTED OVER TWENTY YEARS BEFORE TRIAL, WHEN HE WAS A CHILD, WAS ADMISSIBLE UNDER MILITARY RULE OF EVIDENCE 404(B) OVER DEFENSE OBJECTION.
>
> II. WHETHER ADDITIONAL CHARGE I, WRONGFULLY SOLICITING A FEMALE UNDER SIXTEEN YEARS OF AGE AND NOT APPELLANT'S WIFE TO HAVE SEXUAL INTERCOURSE WITH HIM, SHOULD BE DISMISSED FOR FAILURE TO STATE AN OFFENSE.

We hold that the lower court erred by upholding the trial judge's admission of evidence of uncharged acts of misconduct committed over 20 years before the trial, and therefore need not address Issue II.

FACTS

According to the charges, Appellant began making sexual advances toward his adopted daughter, TM, when she was 12 years old. He gave her condoms and took pictures of her while she was taking a bath. Additionally, he gave her a story he downloaded from the Internet entitled, "Daddy and Me." The story described sexual relations between a father and daughter. Later, Appellant gave TM a letter saying, "You're beautiful," "I want to be your first sexual experience," and "Wouldn't it be better if it was with someone who loved you and wouldn't tell anybody . . . [or] would call you a whore afterwards . . . ." When he gave this to his daughter, she started crying. He immediately took it, ripped it up, and threw it away.

Appellant's wife testified that she found a "story" called "Daddy and Me" in the children's bathroom. The story described a sexual relationship between a father and his young daughter. When the daughter in the story began to reach puberty, her father became attracted to her. The daughter began asking her father about sex and became curious about engaging in sexual activity with him.

Appellant's wife stopped reading the story because she became angry and then went to talk to Appellant. Appellant admitted to her that he was reading the story, but claimed that he accidentally left it in TM's bathroom. Appellant's wife said

she was inclined to believe TM, who had told her that Appellant had purposefully placed the story where TM would see it.

In addition to admitting testimony regarding the story "Daddy and Me," and the evidence concerning the condoms and picture-taking, the judge also admitted evidence that Appellant engaged in sexual contact with his stepsister, KM, 20 years before the trial while both were adolescents.

KM, who was 29 years old at the time of trial, testified about what happened when she was eight years old and Appellant was 13 years old. Sometimes Appellant would enter her room and expose himself, or come in touching himself. On some occasions, Appellant and KM were left alone in the house. He brought pornographic magazines with him, read them, and allowed her to see them, one of which included an illustrated story about a fairy masturbating a man. This conduct led to KM masturbating Appellant. Appellant also asked to see her body on several occasions. On one such occasion she complied, and Appellant attempted to insert his finger into her vagina, but she moved away.

Appellant was charged with photographing TM while she was taking a shower and providing TM with condoms. The charges alleged that these acts were done with the intent to gratify his sexual desires. The prosecutor offered KM's testimony to show intent, plan, and scheme regarding his offenses with TM. See

Military Rule of Evidence 404(b)[hereinafter M.R.E.]. The defense objected, but the judge overruled the objection, finding the evidence was probative of Appellant's intent and plan.

Later, the judge instructed the members that KM's testimony could only be considered on the issues of plan or design, or intent, as to Charge I specification 1, photographing TM while she was taking a shower, and specification 2, providing condoms to TM.

Appellant now argues that the uncharged acts do not show a plan. Appellant further contends that the uncharged acts are not probative of Appellant's intent, because the acts were committed 20 years ago, are not similar to the charged acts, and were committed when he was only a child. Appellant also asserts that even if the evidence was found to be relevant, the probative value of the evidence is substantially outweighed by its prejudicial nature. Based upon these concerns, Appellant argues that the uncharged acts were introduced only to establish his propensity for similar acts, not for a valid purpose under M.R.E. 404(b). The Government counters by arguing that the acts are admissible to show a plan or design by Appellant. Moreover, the Government also argues, and the lower court held, that even if there was error in admitting the evidence, it was harmless. The evidence of guilt included Appellant's written pretrial statement, his oral admissions to his wife and mother, and TM's

5

testimony corroborated in part by Dr. True and TM's brother. The defense presented no evidence.

DISCUSSION

This case concerns evidence of uncharged misconduct, or "other acts" evidence, and the application of the "relevance rules of evidence." M.R.E.s 401, 403, and 404(b). These rules are virtually identical to the Federal Rules of Evidence [hereinafter Fed.R.Evid.]. M.R.E. 401 provides that to be admitted, evidence must be logically relevant, by tending "to make the existence of any fact . . . more probable or less probable than it would be without the evidence." This Court has discussed at length the admission of "other acts" evidence under M.R.E. 404(b), just as the Supreme Court has discussed the federal analog, Fed.R.Evid. 404(b). Over the years, we have relied upon the three-part test in United States v. Reynolds, 29 M.J. 105 (C.M.A. 1989), which has the following elements:

> 1. Does the evidence reasonably support a finding by the court members that appellant committed prior crimes, wrongs or acts?
>
> 2. What "fact . . . of consequence" is made "more" or "less probable" by the existence of this evidence?
>
> 3. Is the "probative value . . . substantially outweighed by the danger of unfair prejudice"?

Id. at 109 (citations omitted). This three-prong test is consistent with Huddleston v. United States, 485 U.S. 681

(1988).  The first and second prongs address the logical relevance of the evidence.[1]

The first prong of the Reynolds test tracks the Supreme Court's holding in Huddleston that "Rule 404(b). . . evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor."  Id. at 689.

The second prong of Reynolds derives from the Supreme Court's conclusion that "[t]he threshold inquiry a court must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is probative of a material issue other than character."  Id. at 686.  The Supreme Court went on to recognize that Fed.R.Evid. 401 and 402 (like M.R.E. 401 and 402) "establish the broad principle that relevant evidence -- evidence that makes the existence of any fact at issue more or less probable -- is admissible unless the Rules provide otherwise."  Id. at 687.

Finally, the third prong of Reynolds mirrors Huddleston's discussion of the danger of undue prejudice, in which the Supreme Court stated, "The House made clear that the version of Rule 404(b) which became law was intended to 'place greater emphasis on admissibility than did the final Court version.'"

---

[1] Manual for Courts-Martial, United States (2002 ed.), Analysis of the Military Rules of Evidence A22-33.

485 U.S. at 688 (citations omitted).  The Supreme Court

continued:

> The Senate echoed this theme:  "[T]he use of
> the discretionary word 'may' with respect to
> the admissibility of evidence of crimes, wrongs,
> or other acts is not intended to confer any
> arbitrary discretion on the trial judge."  Thus,
> Congress was not nearly so concerned with the
> potential prejudicial effect of Rule 404(b)
> evidence as it was with ensuring that
> restrictions would not be placed on the admission
> of such evidence.

Id. at 688-89 (citations omitted).  The third prong ensures that

the evidence is legally, as well as logically, relevant.  As the

Court stated:  "Rule 403 allows the trial judge to exclude

relevant evidence if, among other things, 'its probative value

is substantially outweighed by the danger of unfair prejudice.'"

Id. at 687.  Once the judge determines the evidence to be

logically relevant, the judge "may exclude it only on the basis

of those considerations set forth in Rule 403 . . . ."  Id. at

688.

The military judge found, and the court below agreed, that

the evidence was logically relevant both as to "common plan" and

"intent."  McDonald, 57 M.J. at 755-56.  We disagree.  Applying

the second prong of Reynolds, we hold that the evidence of

Appellant's uncharged acts was not logically relevant to show

either a common plan or Appellant's intent.  See, e.g., United

States v. Humpherys, 57 M.J. 83, 90-91 (C.A.A.F. 2002)(noting

that the moving party must satisfy all three prongs for the

8

evidence to be admissible).  A military judge's decision to admit or exclude evidence is reviewed under an abuse of discretion standard.  United States v. Tanksley, 54 M.J. 169, 175 (C.A.A.F. 2000).  We will not overturn a military judge's evidentiary decision unless that decision was "arbitrary, fanciful, clearly unreasonable," or "clearly erroneous."  United States v. Miller, 46 M.J. 63, 65 (C.A.A.F. 1997)(citations omitted).  A military "judge abuses his discretion if his findings of fact are clearly erroneous or his conclusions of law are incorrect."  Humpherys, 57 M.J. at 90 (citing United States v. Ayala, 43 M.J. 296, 298 (C.A.A.F. 1995)).  Because the admission of the uncharged acts evidence was clearly erroneous under Reynolds, the military judge abused his discretion.  We further hold that the judges' error was prejudicial to Appellant, and therefore merits reversal.

A.  The Common Plan Theory

Under Reynolds' second prong, the common plan analysis considers whether the uncharged acts in question establish a "plan" of which the charged act is an additional manifestation, or whether the acts merely share some common elements.  United States v. Morrison, 52 M.J. 117, 122 (C.A.A.F. 1999); United States v. Munoz, 32 M.J. 359, 363-64 (C.M.A. 1991).  The question as applied to the facts of this case, is whether the uncharged acts evidence shows that Appellant had a plan to

commit indecent acts that manifested itself on two occasions: first, when Appellant was 13 years old with his stepsister, and second, 20 years later, with his adopted daughter. In answering such a question, we have examined the following factors: the relationship between victims and the appellant; ages of the victims; nature of the acts; situs of the acts; circumstances of the acts; and time span. Morrison, 52 M.J. at 122-23. Viewing the facts of this case under that framework, we conclude that the military judge abused his discretion in admitting the uncharged acts to establish a common plan. Indeed, the uncharged acts in this case are extremely dissimilar to the charged offenses: Appellant was 13 years of age at the time of the uncharged acts, rather than a 33-year-old adult; the uncharged acts were committed in the home of his stepsister, where he was visiting, while the charged acts occurred where he was the head of the household; the uncharged acts were with a stepsister who was about five years younger, rather than with a young stepchild under his parental control, who was about 20 years younger.

B. The Intent Theory

As to intent, we consider whether Appellant's state of mind in the commission of both the charged and uncharged acts was sufficiently similar to make the evidence of the prior acts relevant on the intent element of the charged offenses.

10

Tanksley, 54 M.J. at 176-77; United States v. Rappaport, 22 M.J. 445, 447 (C.M.A. 1986).  In this case, Appellant was a 13-year-old child at the time of the uncharged acts, and a 33-year-old married adult at the time of the charged acts.  Absent evidence of that 13-year-old adolescent's mental and emotional state, sufficient to permit meaningful comparison with Appellant's state of mind as an adult 20 years later, the military judge's determination of relevance on the issue of intent was fanciful and clearly unreasonable.

   C.  Effect of the Error

   Having concluded that the military judge abused his discretion in admitting the evidence of Appellant's uncharged acts, we hold that this error was prejudicial and therefore merits reversal.  Article 59(a), UCMJ, 10 U.S.C. § 859(a) (2000) ("A finding or sentence of court-martial may not be held incorrect on the ground of an error law unless the error materially prejudices the substantial rights of the accused.").  In evaluating whether erroneous admission of government evidence is harmless, this Court uses a four part test, "weighing: (1) the strength of the Government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question."  United States v. Kerr, 51 M.J. 401, 405 (C.A.A.F. 1999).  After applying this test, we cannot be confident that the findings of the court-

11

martial were not substantially influenced by the improperly admitted evidence of the Appellant's childhood conduct.

The Government had a strong case that Appellant had taken the photographs and given TM the condoms; however, under both specifications 1 and 2 of Charge I, the Government was required to prove beyond a reasonable doubt that Appellant had taken the photographs and given TM the condoms "with the intent to . . . gratify [his] sexual desires." Manual for Courts-Martial, United States (2002 ed.), Part IV, para. 87.b.(2)(e). The Government's evidence on this element, particularly with respect to the photographs, was not strong. The defense presented no evidence. In this posture, irrelevant and highly inflammatory evidence of Appellant's childhood exposure, masturbation, and attempted digital penetration with an 8-year-old girl, 20 years ago, could not help but be powerful, persuasive, and confusing. Munoz, 32 M.J. at 364; United States v. Mann, 26 M.J. 1, 5 (C.M.A. 1988). Under these circumstances, the childhood acts of Appellant were not only irrelevant, but indistinguishable from propensity evidence, and could only have harmed Appellant in the eyes of the members. Cf. United States v. Holmes, 39 M.J. 176 (C.M.A. 1994).

## DECISION

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is reversed. The findings and the sentence

12

are set aside.  The record of trial is returned to the Judge

Advocate General of the Navy.  A rehearing is authorized.