IN THE CASE OF


UNITED STATES, Appellee

v.

Stevon J. TAYLOR, Fireman Apprentice
U.S. Navy, Appellant

No. 04-0588

Crim. App. No. 200202294

United States Court of Appeals for the Armed Forces

Argued March 8, 2005

Decided June 2, 2005


EFFRON, J., delivered the opinion of the Court, in which GIERKE, C.J., and CRAWFORD, BAKER, and ERDMANN, JJ., joined.


Counsel


For Appellant:  Lieutenant Brian L. Mizer, JAGC, USNR (argued).


For Appellee:  Lieutenant Craig A. Poulson, JAGC, USNR (argued); Commander Charles N. Purnell, JAGC, USN, Lieutenant Colonel William K. Leitzau, USMC, and Lieutenant Frank L. Gatto, JAGC, USNR (on brief).


Military Judge:  Thomas K. Leak


THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

Judge EFFRON delivered the opinion of the Court.

At a special court-martial composed of a military judge sitting alone, Appellant was convicted, contrary to his plea, of desertion in violation of Article 85, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 885 (2000).  Appellant was sentenced to a bad-conduct discharge, confinement for 150 days, and reduction to pay grade E-1.  The convening authority approved the sentence as adjudged.  The United States Navy-Marine Corps Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion.  United States v. Taylor, No. NMCCA 200202294 (N-M. Ct. Crim. App. Apr. 23, 2004).

On Appellant's petition, this Court granted review of the following issue:

> WHETHER, IN LIGHT OF THE SUPREME COURT'S
> RULING IN CRAWFORD v. WASHINGTON, 124 S. CT.
> 1354 (2004), PROSECUTION EXHIBITS 2 AND 3
> CONSTITUTE TESTIMONIAL HEARSAY REQUIRING
> THAT THEIR DECLARANTS BE SUBJECT TO CROSS-
> EXAMINATION AS REQUIRED BY THE SIXTH
> AMENDMENT TO THE U.S. CONSTITUTION.

Additionally, we specified the following two issues:

> WHETHER, APART FROM THE CONFRONTATION ISSUE
> OF CRAWFORD v. WASHINGTON, 124 S. CT. 1354
> (2004), THE MILITARY JUDGE ABUSED HIS
> DISCRETION IN ADMITTING PROSECUTION EXHIBITS
> 2, 3, AND 5 OVER DEFENSE OBJECTION.
>
> WHETHER THE EVIDENCE PRESENTED ON THE MERITS
> WAS LEGALLY SUFFICIENT TO PROVE BEYOND A
> REASONABLE DOUBT THAT APPELLANT WAS GUILTY
> OF DESERTION FROM HIS ORGANIZATION, THE NAVY

> ABSENTEE COLLECTION AND INFORMATION CENTER, ON OR ABOUT 30 DECEMBER 1994, AND THAT THIS DESERTION WAS TERMINATED BY APPREHENSION ON OR ABOUT 20 OCTOBER 2001.

For the reasons stated below, we conclude that the military judge erred in admitting Prosecution Exhibits 2 and 3, and that the error was prejudicial.

I. BACKGROUND

The specification charged that Appellant:

> on or about 30 December 1994, without authority and with intent to remain away therefrom permanently, absent[ed] himself from his organization, to wit: Navy Absentee Collection and Information Center, located at Great Lakes, Illinois, and did remain so absent in desertion until he was apprehended on or about 20 October 2001.

In the armed forces, each unit prepares a daily report, such as a morning report or a muster report, to account for the attendance of military personnel in that unit. In a desertion case in the Navy, the prosecution typically introduces a record known as a "page 6," which documents an unauthorized absence in the servicemember's personnel records. For reasons not apparent in the record of trial, the prosecution in the present case did not produce a muster report or the page 6 from Appellant's personnel record. Instead, the prosecution relied on the information in two naval messages, Prosecution Exhibit 2 (P.E.

3

2) and Prosecution Exhibit 3 (P.E. 3) to prove the dates of Appellant's absence and the elements of the offense.

Documents such as P.E. 2 and P.E. 3 are hearsay when offered into evidence to prove the truth of a matter asserted in the text of the document. See Military Rule of Evidence (M.R.E.) 801(c). Although hearsay is generally inadmissible, see M.R.E. 802, the rules contain a number of exceptions under which hearsay statements may be introduced. See, e.g., M.R.E. 803, 804.

M.R.E. 803(8) creates several exceptions that permit the introduction of hearsay within certain records or reports from public offices or agencies, including public records that describe "matters observed pursuant to duty imposed by law as to which matters there was a duty to report." M.R.E. 803(8)(B). The exception does not apply to matters observed by "police officers and other personnel acting in a law enforcement capacity." Id. Nor does the exception apply to documents if the "sources of information or other circumstances indicate lack of trustworthiness." M.R.E. 803(8); see also Edward J. Imwinkelried, Evidentiary Foundations § 10.06[2], at 415-16 (5th ed. 2002) (discussing the elements of the foundation for public records).

Unlike its counterpart in the Federal Rules of Evidence, M.R.E. 803(8) provides a further exception for specific types of

public records that are admissible even if they do not satisfy one of the categories specified by the rule. See United States v. Broadnax, 23 M.J. 389, 391 (C.M.A. 1987). This exception includes "morning reports and other personnel accountability documents" if "made by a person within the scope of the person's official duties and those duties included a duty to know or to ascertain through appropriate and trustworthy channels of information the truth of the fact or event and to record such fact or event." M.R.E. 803(8). Under this exception, a standard personnel accountability document such as a morning report is admissible if it meets the above criteria, even if the document records a matter observed by law enforcement personnel.

The pertinent documents admitted in Appellant's court-martial were photocopies of the original records. M.R.E. 1005 provides that the contents of an official record may be proven by a copy if the copy is (1) certified as correct or attested to in accordance with M.R.E. 902, or (2) testified to be correct by a witness who has compared it with the original. The rule indicates a clear preference for these two methods, but also allows other evidence of the contents of a record to be given if the Government exercises reasonable diligence but is unable to obtain a copy that complies with the above requirements. M.R.E. 1005; see 2 Steven A. Saltzburg et al., Military Rules of Evidence Manual § 1005.02, at 10-17 (5th ed. 2003).

## II. DISCUSSION

### A. PROSECUTION EXHIBIT 2

P.E. 2, one of the exhibits the Government sought to introduce against Appellant in this case, is a copy of a document identified by the Government's foundation witness, Legalman First Class (LN1) Sharell A. Welch, as a declaration of desertion message. LN1 Welch, the military justice supervisor for the staff judge advocate's office at Naval Air Station Pensacola, which handled the administrative processing regarding Appellant when he was returned to military control, stated that the Naval Military Personnel Manual requires a declaration of desertion message to be created when a member of the armed forces fails to report for duty. Bureau of Naval Personnel, Naval Military Personnel Manual (MILPERSMAN) Article 1600-060 (Aug. 2002, updated May 3, 2005). In accordance with the format for declaration of desertion messages specified in the Naval Military Personnel Manual, the document indicates that Appellant was declared a deserter from the USS L. Y. Spear on September 30, 1994. See MILPERSMAN 1600-060. There is, however, additional content at the bottom of the document that is not part of the declaration of desertion message, including a date stamp of September 26, 1995, and what appears to be an upside-down and backward portion of a preprinted form.

At trial, defense counsel objected to P.E. 2 on numerous grounds, including relevancy, hearsay, improper foundation, and authenticity. The military judge overruled the objections and allowed P.E. 2 to be admitted into evidence. We review a military judge's ruling on evidentiary matters for an abuse of discretion. United States v. McDonald, 59 M.J. 426, 430 (C.A.A.F. 2004).

The Government contends that P.E. 2 was a personnel accountability document, admissible under the specific exception provided for such documents in M.R.E. 803(8). P.E. 2, however, is not a routine accountability document. In addition to the information concerning desertion, there is unreadable content on the document. The Government could not shed light upon this portion of the exhibit. In view of this unknown content on the document, indecipherable even to the party attempting to introduce it, P.E. 2 was not admissible as a personnel accountability document under M.R.E. 803(8).

We next consider whether P.E. 2 was admissible under the M.R.E. 803(8)(B) hearsay exception for "matters observed pursuant to duty imposed by law as to which matters there was a duty to report." This exception does not apply, however, if "the sources of information or other circumstances indicate lack of trustworthiness." M.R.E. 803(8). When the Government is unable to explain the content of a record it is attempting to

introduce, the document does not satisfy the principles of trustworthiness applicable to M.R.E. 803(8). See 5 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 803.10[1] (Joseph M. McLaughlin ed., 2d ed. 2005).

Even if P.E. 2 fell within a hearsay exception under M.R.E. 803(8), it would not qualify as an admissible copy under M.R.E. 1005. The prosecution acknowledged at trial that P.E. 2 was not certified or attested to, and the Government's foundation witness, LN1 Welch, did not testify that she compared it with the original document. The Government asserts that M.R.E. 1005 was satisfied despite these deficiencies because the Government presented other evidence of the contents of the record. The Government, however, could rely on such other evidence only by demonstrating that, through the exercise of reasonable diligence, it could not obtain a certified or attested copy or a copy identified as being correct by a witness who compared it to the original. See Saltzburg § 1005.02, at 10-17. In this case, there is no indication that the Government even attempted to authenticate P.E. 2 through one of the preferred methods, let alone that it used reasonable diligence. Because P.E. 2 did not meet a hearsay exception and did not qualify as an admissible copy, the military judge abused his discretion by admitting P.E. 2 over defense counsel's objections.

B. PROSECUTION EXHIBIT 3

P.E. 3, the other naval message introduced by the prosecution, is a copy of an e-mail sent from Naval Air Station Pensacola to numerous recipients. LN1 Welch identified the document as a declaration of return from desertion message, which she stated was required by the Naval Military Personnel Manual. See MILPERSMAN 1600-070 (Aug. 2002, updated Sept. 9, 2004). The message indicates that Appellant deserted from the Navy Absentee Collection and Information Center on December 30, 1994, that he was apprehended by the Longview Police Department on March 7, 2001, and that he was returned to military control on October 20, 2001. LN1 Welch testified that her office created P.E. 3 upon Appellant's return to military control.

At trial, defense counsel objected to P.E. 3 on the basis that it constituted "hearsay within hearsay," noting that LN1 Welch testified that the individual in her office who created P.E. 3 relied upon a movement authorization document and a DD 553 arrest warrant in preparing the message. Although trial counsel acknowledged that the Government did not intend to admit the DD 553 arrest warrant into evidence, trial counsel maintained that the DD 553 arrest warrant was not inadmissible hearsay because it fell under the public records exception. The military judge admitted P.E. 3 into evidence, overruling defense counsel's objections.

Because the preparer of P.E. 3 obtained the information from other hearsay documents -- the DD 553 arrest warrant and the movement authorization document -- P.E. 3 was admissible only if those documents were admissible under a hearsay exception. M.R.E. 805. LN1 Welch testified that the arrest warrant was created by the Navy Absentee Collection Unit in Great Lakes, Illinois. The record indicates that the DD 553 arrest warrant was issued in April 2000 -- more than five years after Appellant's alleged desertion and more than a year and a half before his apprehension. The only foundation evidence elicited by the prosecution during trial was a statement by LN1 Welch that DD 553 arrest warrants were maintained by the Navy and prepared in the regular course of business.

Such information did not provide a sufficient basis for concluding that the DD 553 arrest warrant introduced in the present case was admissible under the M.R.E. 803(8)(B) hearsay exception. Arrest warrants based upon the observations of persons acting in a law enforcement capacity are not admissible under M.R.E. 803(8)(B). The record in this case does not provide a basis for concluding that the arrest warrant at issue here was not covered by M.R.E. 803(8)(B).

To the extent that the last sentence of M.R.E. 803(8) permits admission of designated military documents, the DD 553 at issue here did not meet the rule's criteria for admissibility

because the prosecution offered no evidence as to the identity or duties of the declarant of the DD 553. As a result, the record does not establish that the DD 553 was "made by a person within the scope of the person's official duties and those duties included a duty to know or to ascertain through appropriate and trustworthy channels of information the truth of the fact or event and to record such fact or event." M.R.E. 803(8). The record of trial provides even less information regarding the other source for P.E. 3, the movement authorization document. The movement authorization document was not admitted into evidence and its contents are unknown, as are the circumstances surrounding its preparation and the duties of its unidentified declarant. Like the DD 553 arrest warrant, the movement authorization document does not satisfy any of the exceptions created by M.R.E 803(8). Because the declarant of P.E. 3 relied on inadmissible hearsay in creating the document, the military judge erred in admitting P.E. 3.

## C. PREJUDICE

Because we hold that the military judge abused his discretion in admitting P.E. 2 and P.E. 3, we must now determine whether the error materially prejudiced the substantial rights of the accused. See Article 59(a), UCMJ, 10 U.S.C. § 859 (2000). For a nonconstitutional error, "the Government must

11

demonstrate that the error did not have a substantial influence on the findings." United States v. McCollum, 58 M.J. 323, 342 (C.A.A.F. 2003). When evaluating the harm from the erroneous admission of Government evidence, this Court weighs "(1) the strength of the Government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question." McDonald, 59 M.J. at 430 (citing United States v. Kerr, 51 M.J. 401, 405 (C.A.A.F. 1999)).

In Appellant's court-martial, the Government was required to prove the following elements of desertion terminated by apprehension: (1) Appellant absented himself from his organization; (2) the absence was without authority; (3) Appellant intended to remain away from his organization permanently; (4) Appellant remained absent until the date alleged; and (5) Appellant's absence was terminated by apprehension. See Article 85, UCMJ, 10 U.S.C. § 885 (2000).

Apart from P.E. 2 and P.E. 3, the Government's evidence consists of Prosecution Exhibit 1 (P.E. 1), Prosecution Exhibit 5 (P.E. 5), and the testimony of Police Officer Charles D. Ferrell. P.E. 1 is Appellant's service contract, which does not establish any of the elements. P.E. 5 consists of a certificate of attestation and fourteen pages of attested copies of documents from the Gregg County Clerk's Office in Texas. The

documents show that during the period Appellant was allegedly absent, he was convicted three times and was subject to two sets of probation conditions, both of which were revoked. The military judge ruled that P.E. 5 was admissible for the limited purpose of showing Appellant's intent to remain away, only one of the five elements.

Police Officer Ferrell of the Longview Police Department testified about his apprehension of Appellant in Longview, Texas, on March 7, 2001. Although Officer Ferrell's testimony establishes that Appellant's absence was terminated by apprehension, it is not sufficient to establish that Appellant absented himself from his organization without authority. Consequently, without P.E. 2 and P.E. 3, the Government could not establish all of the elements of the charge against Appellant. Because the improperly admitted evidence had a substantial influence on the findings, we will set aside the findings and authorize a rehearing. See Lockhart v. Nelson, 488 U.S. 33 (1988). In view of our resolution of this case on nonconstitutional grounds, we need not address the granted issue concerning constitutional questions under Crawford v. Washington, 541 U.S. 36 (2004).

III. CONCLUSION

The military judge erred in admitting P.E. 2 and P.E. 3. The decision of the United States Navy-Marine Corps Court of Criminal Appeals affirming the finding of guilty and the sentence is reversed. The finding of guilty and the sentence are set aside. The record of trial is returned to the Judge Advocate General of the Navy, and a rehearing is authorized.