# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**J.A. FISCHER, B.T. PALMER, T.H. CAMPBELL**
Appellate Military Judges

**UNITED STATES OF AMERICA**

v.

**RENATO M. SERRANO**
**FIRE CONTROLMAN FIRST CLASS (E-6), U.S. NAVY**

**NMCCA 201500057**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged:** 9 September 2014.
**Military Judge:** CDR Michael J. Luken, JAGC, USN.
**Convening Authority:** Commander, Navy Region Mid-Atlantic, Norfolk, VA.
**Staff Judge Advocate's Recommendation:** CDR S.J. Gawronski, JAGC, USN.
**For Appellant:** C. Ed Massey, Esq.; Capt Michael Magee, USMC.
**For Appellee:** Maj Tracey Holtshirley, USMC; LT Jamie Belforti, JAGC, USN.

**29 December 2015**

---------------------------------------------------
## OPINION OF THE COURT
---------------------------------------------------

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

PER CURIAM:

A military judge (MJ) sitting as a general court-martial convicted the appellant, consistent with his pleas, of sexually assaulting a child between 12 and 16 years old, on divers occasions, in violation of Article 120, Uniform Code of Military

Justice, 10 U.S.C. § 920.[1]  The convening authority (CA) approved the adjudged sentence of 15 years' confinement and a dishonorable discharge—-and suspended confinement beyond 12 years in accordance with a pretrial agreement (PTA).[2]

The appellant argues that the MJ erred by allowing the testimony of two MILITARY RULE OF EVIDENCE 414, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.) sentencing witnesses, and that the approved sentence is unjustifiably severe.  This court also identified two post-trial issues that the parties did not address.  After carefully considering the record of trial and the parties' submissions, we conclude the findings and sentence are correct in law and fact, and find no error materially prejudicial to the appellant's substantial rights.  Arts. 59(a) and 66(c), UCMJ.

## Background

In September 2008, the victim in the charged offense, SH, moved from New York to Virginia to live with her maternal aunt and uncle by marriage.  SH was 15 years old.  Her uncle's younger brother, the appellant, also lived in her new home.  The appellant first met SH when she was three, and saw her on some occasions afterwards.  SH referred to the appellant as "Uncle Reny." [3]  He was 35.  Although his wife was in the Philippines, the appellant had married earlier that year.

Within weeks of SH's arrival, the appellant began touching her neck and back in a sexual manner.  He progressed to touching her thighs and to digital vaginal penetration.  By November 2008, he asked SH to sneak to his bedroom at night.  There they each performed oral sex and had intercourse at least three times before SH moved to Pennsylvania in January 2009.

In October 2011, SH told her aunt what the appellant had done to her.  The aunt angrily confronted the deployed appellant via email.  He did not deny the allegations, but claimed SH had seduced him.  SH later reported the abuse to law enforcement.

---

[1] The appellant pled not guilty to three other Article 120 specifications and an Article 125 charge and specification involving the same child victim, SH. Those offenses were withdrawn and dismissed pursuant to a pretrial agreement.

[2] As clemency, the CA also deferred automatic forfeitures after trial and then waived them for six months from the date of his action on the case for the benefit of the appellant's dependent wife and daughter.

[3] Prosecution Exhibit 1 at 1.

Investigators got sworn, written statements from two of the appellant's biological nieces, CD and CW, who described being sexually abused by him between 1986 and 2002. The appellant, their mother's brother, is seven and 11 years older than them, respectively. Upon moving to the United States as a 14-year-old, he lived with them until either one went to college and then he left their home for military service. The reported abuse involved kissing, fondling, and digitally penetrating one niece before she was 10 until she was 17. The same acts began with the younger niece by the time she was 12, but progressed to nightly oral or vaginal intercourse in the appellant's bedroom for about five years, until she was 18.

After the appellant enlisted, CD and CW's mother and some extended family members became vaguely aware he had done something to CD and CW. Their mother refused to let the appellant live in her home afterwards when he was stationed in Virginia in 2008--so he lived with his brother's family instead. CD and CW's statements were exhibits at the appellant's Article 32 hearing.

*In limine*, the Government sought to admit CD and CW's testimony for the merits and sentencing under MIL. R. EVID. 414.[4] The civilian trial defense counsel (CTDC) argued the prior acts lacked relevance and were overly prejudicial.[5] After receiving arguments and reviewing CD and CW's written statements, the MJ granted the Government's motion[6] and issued a written ruling.[7]

Having withdrawn from an initial PTA[8] once the Government filed the MIL. R. EVID. 414 motion, the appellant negotiated a second PTA after the MJ's ruling. Like the first PTA, it included the following "Specially Negotiated" provision:

> I agree to waive all motions except those that are otherwise non-waivable pursuant to [RULE FOR COURTS-MARTIAL] 705(c)(1)(B) [, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.)]. I have not been compelled to waive

---

[4] Appellate Exhibit IX.

[5] AE XIX at 3-5.

[6] Record at 76-78; 85.

[7] AE XXXII.

[8] AEs VII and VIII. AE VIII was sealed without the MJ's awareness of the sentence limitations within the agreement—-a 10 year confinement cap.

my right to due process, the right to challenge the jurisdiction of the court-martial, the right to a speedy trial, the right to raise the issue of unlawful command influence, or any other motion that cannot be waived. I have no motions to bring and I am not aware of any motion that was waived pursuant to this provision.[9]

Reviewing that provision with the appellant, the MJ asked about previously litigated motions. The CTDC responded:

I believe the law is quite clear that...once the accused enters a guilty plea, if the court accepts it, all prior motions that have been submitted to the court and decided by a court, are waived for appellate review purposes. The accused fully understands that. I've discussed that with him fully.[10]

The MJ then directly addressed the appellant:

So, [appellant], you now understand what all that lawyer talk just was about? Let me explain it to you real quick. So, what happens, we had some motions that your counsel filed previously. That's when we were in the court before. I'd listen to argument, and then I made my rulings. What's happening now is, based on the terms of this agreement, the specific term is, you're now saying—-so you get the benefit of the deal that the government is offering you. You're agreeing to waive all those motions and say, basically, "Those aren't important any more for appellate review." Do you understand that?[11]

The appellant replied, "Yes, sir."[12]

The specially negotiated PTA provisions also included an agreement, "not to object to any victim impact statements being offered in sentencing on the basis of foundation, hearsay, authenticity, best evidence, or the Confrontation Clause of the

---

[9] AE XXXIV at 5-6.

[10] Record at 132.

[11] *Id.* at 132-33.

[12] *Id.* at 133.

Sixth Amendment."[13]  When CD was called as the first sentencing witness, the appellant argued her expected testimony was irrelevant, improper R.C.M. 1001 evidence, and inadmissible under MIL. R. EVID. 403.  In overruling the objection, the MJ explained, "I'm going to adopt my ruling as to M.R.E. 414.  My analysis is the same, including my 403 analysis."[14]  CD and CW then testified about the appellant's sexual abuse, consistent with their written, sworn statements.

## Discussion

### *Evidence of Similar Crimes*

The Government argues the appellant waived appeal of the MIL. R. EVID. 414 evidence's admissibility by unconditionally pleading guilty, or that he subsequently waived appeal by not renewing a MIL. R. EVID. 414 objection at sentencing.[15]  We assume, without deciding, that evidence in aggravation goes beyond the factual issue of guilt for purposes of waiver based on a guilty plea.[16]  The appellant did not expressly waive this assignment of error, since the PTA did not prevent all objections to CD and CW's testimony, and the defense raised timely objections at sentencing.  While failure to object on specific grounds may result in waiver of potentially valid issues for appeal under MIL. R. EVID. 103(a)(1), the MIL. R. EVID. 403 objection here necessarily implicated MIL. R. EVID. 414--as evidenced by the MJ adopting his earlier MIL. R. EVID. 414 analysis in overruling the objection.  *See United States v. Fontenot*, 29 M.J. 244, 246 (C.M.A. 1989) (trial defense counsel did not waive "all other possible objections to admissibility" by citing only MIL. R. EVID. 403 when "all parties at trial fully appreciated the substance of those complaints and . . . the military judge had full opportunity to consider them --which, after all, is what the waiver rule is designed to provide in the first place.").  Therefore, we address, but find unpersuasive, the appellant's MIL. R. EVID. 414 challenge.

We review the admissibility of sentencing evidence for an abuse of discretion, *United States v. Ediger*, 68 M.J. 243, 248

---

[13] AE XXXIV at 6.

[14] Record at 146-47.

[15] Government Brief of 23 Oct 2015 at 13-16.

[16] *But see United States v. Bradley*, 68 M.J. 279, 282 (C.A.A.F. 2010) (holding an "unconditional guilty plea waived both [a] motion to dismiss and [an] objection to [the trial counsel's] presence on the prosecution team.").

(C.A.A.F. 2010)), and do not overturn an MJ's ruling unless it is "'arbitrary, fanciful, clearly unreasonable, or clearly erroneous,'" *United States v. McDonald,* 59 M.J. 426, 430 (C.A.A.F. 2004) (quoting *United States v. Miller*, 46 M.J. 63, 65 (C.A.A.F. 1997)), or influenced by an erroneous view of the law. *Id.* (quoting *United States v. Humphreys*, 57 M.J. 83, 90 (C.A.A.F. 2002)).

An MJ must make three threshold findings before admitting MIL. R. EVID. 414 evidence: (1) whether the accused is charged with an act of child molestation as defined by MIL. R. EVID. 414(a); (2) whether the proffered evidence relates to the accused's commission of another child molestation offense as defined by the rule; and (3) whether the evidence is relevant under MIL. R. EVID. 401 and 402. *Ediger*, 68 M.J. at 248 (citing *United States v. Bare*, 65 M.J. 35, 36 (C.A.A.F 2007)).

Upon finding proffered evidence satisfies the initial thresholds, the MJ must apply the MIL. R. EVID. 403 balancing test, under which the testimony may be excluded if its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the members, or by considerations of undue delay." The MJ should consider at least the following factors: 1) the strength of proof of the prior act; 2) the probative weight of the evidence; 3) potential to present less prejudicial evidence; 4) possible distraction of the fact-finder; 5) time needed to prove the prior conduct; 6) temporal proximity of the prior event; 7) frequency of the acts; 8) presence or lack of intervening circumstances; and 9) relationship between the parties. *United States v. Wright*, 53 M.J. 476, 482 (C.A.A.F. 2000) (citing *United States v. Enjady*, 134 F.3d 1427, 1433 (10th Cir. 1998) and *United States v. Guardia*, 135 F.3d 1326, 1331) (10th Cir. 1998).

The MJ here made the first two threshold findings, noting they were not challenged. He found the prior incidents relevant under MIL. R. EVID. 401 and 402 as showing a firm pattern of sexual conduct with nieces between eight and 16, at least seven years younger than, and living in the same home as, the appellant.[17] He then considered the *Wright* factors in a MIL. R. EVID. 403 analysis.[18] He found CD and CW's accounts very strong proof of the prior acts. Being so similar to each other and to

---

[17] AE XXXII at 4-5.

[18] *Id*. at 5-6.

what SH described, under the same or very similar living arrangements, the accounts had high probative weight. No less prejudicial evidence than the testimony existed. The need to minimize trials within trials would be met by limiting corroborating evidence for the testimony. The probative value was not outweighed by the readily apparent distraction and additional time resulting from presenting proof of the prior conduct. Temporal proximity of the previous acts was not too distant considering the appellant engaged CD, CW, or SH in frequent and regular sexual conduct whenever one of the girls lived with him. The conduct ended only when a niece moved or the appellant was stationed elsewhere. Relationships between the parties differed only in that SH was not the appellant's biological niece--but his brother's niece by marriage. Otherwise, the victims were all under-aged, female, extended family members living in the same home as the appellant.[19] Thus, the MJ reached a permissible conclusion on admissibility of CD and CW's testimony about the appellant previously molesting them.

Considering CD and CW's testimony for sentencing also was not an abuse of discretion, despite the appellant's R.C.M. 1001 and MIL. R. EVID. 403 objections. See *United States v. Tanner*, 63 M.J. 445, 449 (C.A.A.F. 2006) (holding that "in a child molestation case, evidence of a prior act of child molestation 'directly relat[es] to' the offense of which the accused has been found guilty and is therefore relevant during sentencing under R.C.M. 1001(b)(4)").

### Sentence Appropriateness

We review sentence appropriateness *de novo*. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006). "Sentence appropriateness involves the judicial function of assuring that

---

[19] The ruling also addressed when the appellant was a minor: "[I]nteraction with C.D. continued nearly 7 years *after* he reached the age of 18. He was about twice C.D.'s age when the alleged abuse began: he was 14-15 years old while she was about 7-8 years old. He continued the sexual conduct until he was 25 years old. The Accused also turned to her sister, C.W. during an overlapping period after the Accused reached 18. Again, the pattern of the age, relationship, and timing between these incidents is too great....the court *specifically find*s the Accused's conduct was chronic throughout. The prior sexual conduct with C.D. while the Accused was a minor does not fall within any concern that the prior incidents do not show propensity but conduct of an adolescent making immature choices without appreciating the severity of his acts. Weighing all the factors above and considering the high probative value to any unfair prejudice, the scales tip heavily in favor of the evidence's admission." *Id.* at 6 (emphasis in original).

justice is done and that the accused gets the punishment he deserves." *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988). This requires our "individualized consideration of the particular accused on the basis of the nature and seriousness of the offense and character of the offender." *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (citations and internal quotation marks omitted). Despite our significant discretion in reviewing the appropriateness and severity of the adjudged sentence, we may not engage in acts of clemency. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

The appellant repeatedly manipulated a child related to his extended family to satisfy his sexual desires while living in his brother's home. He began this behavior shortly after the child's arrival, "seeking refuge from th[e] tumultuous environment"[20] of her previous home and parents' pending divorce. Years of similar sexual abuse of his own nieces while living in his sister's home demonstrate the extent of the harm inflicted on his family and his risk to society. With individualized consideration of the appellant, the nature and seriousness of his offenses, his record of service, and all the matters within the record of trial, we find his adjudged sentence appropriate.

### Post-Trial Issues not Raised as Assignments of Error

We note two post-trial issues not raised by the parties: the addendum to the staff judge advocate's recommendation (SJAR) fails to address the allegation of legal error in the appellant's clemency request, and the promulgating order inaccurately reflects the dates of the sole offense of which the appellant was convicted--Specification 4 under Charge I.

The CTDC argued in a clemency request that consideration of CD and CW's "inadmissible evidence" resulted in the MJ's "very high sentence." The clemency letter was an enclosure to the SJAR addendum, which advised the CA that he was "required to consider these matters in determining whether to approve or disapprove any of the findings of guilty and the action [he would] take on the sentence." It also advised, "There were no issues of legal error raised" by the defense. Having no "new matter" in the SJAR addendum under R.C.M. 1106(f)(7), the defense was not due more time for comment. The CA approved the sentence as adjudged without further defense correspondence.

---

[20] PE 1 at 1.

Assuming the SJA committed plain error in violation of R.C.M. 1106(d)(4), this court is nonetheless "free to affirm when a defense allegation of legal error would not foreseeably have led to a favorable recommendation by the [SJA] or to corrective action by the [CA]." *United States v. Hill*, 27 M.J. 293, 297 (C.M.A. 1988). In this appeal, we have evaluated and found no merit in the same claims that CD and CW's testimony was inadmissible. Consequently, based on the facts in this case, the SJA's improper advice did not prejudice the appellant.

General Court-Martial Order No. 29-14, dated 19 February 2015, says "from on or about September 2008 to on or about November 2008 to on or about January 2009" instead of "from on or about November 2008 to on or about January 2009." Applying a harmless-error standard, we are convinced this scrivener's error does not amount to plain error materially prejudicing the appellant's substantial rights. *See United States v. Crumpley*, 49 M.J. 538, 539 (N.M.Ct.Crim.App. 1998). But as the appellant is entitled to an official record correctly reflecting his court-martial results, we nonetheless order corrective action.

**Conclusion**

We direct the supplemental court-martial order remove the words "September 2008 to on or about" from the recitation of Specification 4 of Charge I. Otherwise, the findings and sentence as approved by the CA are affirmed.

For the Court

R.H. TROIDL
Clerk of Court

9