**UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS**

**UNITED STATES**

**v.**

**Michael R. RODRIGUEZ**
**Boatswain's Mate Second Class (E-5), U.S. Coast Guard**

**CGCMG 0353**
**Docket No. 1450**

**27 June 2018**

| | |
|---|---|
| Military Judges: | CDR Cassie A. Kitchen, USCG |
| | CAPT Robert J. Crow, JAGC, USN |
| Appellate Defense Counsel: | Mr. James S. Trieschmann, Esq. |
| | LCDR Jason W. Roberts, USCG |
| Appellate Government Counsel: | LT Connor B. Simpson, USCG |
| | LCDR Tereza Z. Ohley, USCG |

**BEFORE**
**McCLELLAND, HAVRANEK & BRUBAKER**
Appellate Military Judges

BRUBAKER, Judge:

A military judge sitting as a general court-martial convicted Appellant, contrary to his pleas, of sexual abuse of a child and adultery in violation of Articles 120b and 134, Uniform Code of Military Justice (UCMJ). On 21 September 2016, the military judge sentenced Appellant to reduction to E-1, confinement for eighteen months, and a bad-conduct discharge. On 27 February 2017, the Convening Authority disapproved the reduction and waived automatic forfeitures for a period of six months but otherwise approved the sentence.

Appellant raises four assignments of error: (1) the military judge abused his discretion by admitting evidence that Appellant had a "foot fetish"; (2) the evidence of sexual abuse of a child is legally and factually insufficient; (3) the Staff Judge Advocate misadvised the convening

authority about his authority in taking action; and (4) Appellant was prejudiced by unreasonable post-trial delay.[1]  We disagree and affirm.

## Background

A search of a cell phone in an unrelated case exposed a volume of sexually explicit text messages between Appellant and the owner of the phone, Mrs. EJ.  Besides exposing an extramarital affair between the two, the messages evinced a mutual sexual fascination with feet and Appellant's apparent sexual interest in the feet of his then eight-year-old stepdaughter, VG.  Following further investigation, including a forensic interview of VG, the Government charged Appellant with, among other things, committing a lewd act upon VG by kissing her feet with an intent to arouse or gratify his own sexual desire.

At trial, VG testified that Appellant would "sometimes" kiss her feet, explaining that "he likes to play around with me, he tickles it and then . . .  kisses it like a real quick kiss.  And that's it."  (R.19SEP at 83).  She described Appellant, on his request, painting her toenails and answered in the affirmative that Appellant also massaged her feet.  Her trial testimony was relatively perfunctory, offering, in particular, no evidence of *why* Appellant was kissing her feet.  To prove that, the Government turned to other evidence and witnesses—which brings us to the first assigned error.

## Admissibility of Evidence Under Military Rule of Evidence 404(b)

Over Defense objection, the military judge admitted evidence of Appellant's general sexual interest in feet, including video clips seized from his computer, testimony from his ex-wife, and testimony from his paramour, Mrs. EJ, who also provided evidence of Appellant's sexual interest in VG's feet.  Mrs. EJ testified that she and Appellant shared a mutual sexual interest in feet and would use them in foreplay and sexual acts, including "touching, kissing, and sucking on them."  (R.20SEP at 19).  They also would send each other picture messages and "like sexting messages of what we wanted to do in detail describing what sexual things we wanted to do."  *Id.*  In one exchange, Appellant suggested that Mrs. EJ have one of her co-worker's "feet in

---

[1] Appellant personally raised assignments of error (1) and (4) pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

ur face while u watch pornhub and masturbate." (Prosecution Ex. 6 at 61.) Mrs. EJ replied, "i would shes got oriental short little feet theyre adorable," to which Appellant replied, "Probably for the whole thing in my mouth like I do with [VG]." *Id*. Appellant also sent to Mrs. EJ photographs of VG's feet; following one exchange, he texted, "I was showing u [VG's] feet." "Posing them for u." (Prosecution Ex. 6 at 63.) Mrs. EJ replied she was "pretty upset," that "the only feet i wanted were yours," and "[t]hose little toes tho do make me happy but not the same." *Id.* Appellant persisted: "I wanted to see u lick [VG's] feet." "And suck on mine." *Id.*

Appellant avers the military judge erred by allowing this evidence over his motion to exclude it. We disagree.

We review a military judge's decision to admit evidence for an abuse of discretion. *United States v. Solomon*, 72 M.J. 176, 179 (C.A.A.F. 2013). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *Id.* (quoting *United States v. White*, 69 M.J. 236, 239 (C.A.A.F. 2010)).

Military Rule of Evidence (M.R.E.) 404(b) "permits evidence of 'other crimes, wrongs, or acts' to prove facts other than a person's character, such as 'intent, knowledge, or absence of mistake or accident.'" *United States v. Tyndale,* 56 M.J. 209, 212 (C.A.A.F. 2001) (emphasis omitted). To determine admissibility of evidence under M.R.E. 404(b), we apply the three-part *Reynolds* test:

1. The evidence must reasonably support a finding that Appellant committed the alleged acts;

2. A fact of consequence must be made more or less probable by the existence of the evidence;

3. The evidence's probative value must not be substantially outweighed by the danger of unfair prejudice.

*United States v. Reynolds,* 29 M.J. 105, 109 (C.M.A. 1989).

When analyzing the admissibility of uncharged acts as evidence of intent, "we consider whether Appellant's state of mind in the commission of both the charged and uncharged acts was sufficiently similar to make the evidence of the prior acts relevant on the intent element of the charged offenses." *United States v. McDonald*, 59 M.J. 426, 430 (C.A.A.F. 2004). There must be a sufficient link between the uncharged acts and Appellant's state of mind while committing the charged misconduct. *Id.*

The military judge issued a written ruling where he correctly stated the law, made findings of fact supported by the evidence, and provided detailed analysis to support his conclusion that the evidence of Appellant's sexual interest in feet—even when non-criminal and involving consenting adults—was admissible as circumstantial evidence of Appellant's intent when he kissed VG's feet. We finding nothing "arbitrary, fanciful, clearly unreasonable, or clearly erroneous" about this ruling. *Solomon*, 72 M.J. at 179. Indeed, the evidence of Appellant's sexual interest in feet, and in particular, Appellant's tying discussions of his step-daughter's feet into the broader context of sexting with his paramour, is highly probative evidence of why he was kissing VG's feet—that is, his intent. The military judge did not abuse his discretion in admitting the evidence.

### Sufficiency of the Evidence

We review *de novo* whether Appellant's sexual abuse conviction is supported by legally and factually sufficient evidence. *United States v. Washington,* 57 M.J. 394, 399 (C.A.A.F. 2002). Evidence is legally sufficient if, "considering the evidence in the light most favorable to the prosecution, any reasonable fact-finder could have found all the essential elements beyond a reasonable doubt." *United States v. Day,* 66 M.J. 172, 173–74 (C.A.A.F. 2008) (citing *United States v. Turner,* 25 M.J. 324, 324 (C.M.A.1987)). In applying this test, "we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner,* 56 M.J. 131, 134 (C.A.A.F.2001) (citations omitted).

Evidence is factually sufficient if, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, we are ourselves convinced of Appellant's guilt beyond a reasonable doubt. Article 66(c), UCMJ; *United States v. Rosario,*

76 M.J. 114, 117 (C.A.A.F. 2017). In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington,* 57 M.J. at 399. "Reasonable doubt, however, does not mean the evidence must be free from conflict." *United States v. Reed,* 51 M.J. 559, 562 (N.M.Ct.Crim.App. 1999) (citing *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986)), *aff'd* 54 M.J. 37 (C.A.A.F. 2000).

Sexual abuse of a child as charged here required the Government to prove that: (1) Appellant on divers occasions committed a lewd act upon VG by kissing her feet with his lips with an intent to arouse or gratify his sexual desire; and (2) VG, at the time, had not attained the age of twelve years. Charge Sheet; Article 120b(c), (h)(5)(A), UCMJ. It is undisputed that Appellant kissed VG's feet while she was under the age of twelve. Instead, Appellant disputes that the evidence supports that he kissed VG's feet on more than one occasion or that he did so with intent to gratify sexual lust or desire.

The trial counsel failed to ask witnesses directly whether Appellant had kissed VG's feet on more than one occasion. This would have simplified matters. Still, the context of the witnesses' testimony makes it clear that he did. When asked whether Appellant kisses her feet, VG responded, "Sometimes." (R.19SEP at 83.) Asked to explain the context of him kissing her feet, she responded that "he likes to play around with me, he tickles it and then [] kisses it like a real quick kiss." *Id.* Appellant's wife acknowledged she had observed Appellant kiss VG's feet and give them "raspberries" (blowing on her feet with his lips) and that Appellant would "[b]ite and aggravate" VG's feet. (R.19SEP at 118.) Mrs. EJ testified that she personally observed Appellant kissing VG's feet, explaining that he "would play around and kiss on her feet or be like tossing her onto the couch and give her raspberry's [sic] towards her feet." (R.20SEP at 29.) Considered in a light most favorable to the prosecution, a reasonable fact-finder could have found beyond a reasonable doubt, based on this evidence, that Appellant kissed VG's feet on more than one occasion. Further, we ourselves are convinced beyond a reasonable doubt that Appellant kissed VG's feet on more than one occasion.

We likewise find sufficient evidence of intent. Although as noted, VG's testimony itself did little to illuminate Appellant's intent, we agree with the military judge's assessment in his special findings:

> The evidence of intent to arouse and gratify the sexual desire of [Appellant] is demonstrated most significantly through [his] text messages to [Mrs. EJ]. Both preceding and following other sexually explicit text conversations, [Appellant's] expressing an ability to put another woman's small foot into his mouth like he does with V.G.'s was compelling evidence of sexual intent when kissing V.G.'s feet. The evidence was further strengthened by additional admissions by [Appellant] that he would pose V.G.'s feet for [Mrs. EJ] for purposes of foreplay and stating that he would like to see [Mrs. EJ] lick V.G.'s feet and suck on his.

(Appellate Ex. XXVII[2] at 4–5.) Based on this evidence, a reasonable fact-finder could have found that Appellant had the requisite intent and we ourselves are convinced beyond a reasonable doubt that he did. Taken as a whole, we conclude that Appellant's conviction for sexual abuse of a child was supported by legally and factually sufficient evidence.

## Staff Judge Advocate's Recommendation

Appellant asserts the Staff Judge Advocate's recommendation incorrectly advised the Convening Authority on his ability to grant clemency. Appellant raises this for the first time on appeal; he thus forfeited the issue and must demonstrate plain error to prevail. *United States v. Scalo*, 60 M.J. 435, 436 (C.A.A.F. 2005) (citing R.C.M. 1106(f); *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000)). Under a plain error analysis, Appellant must persuade this court that: (1) there was error; (2) the error was plain or obvious; and (3) the error materially prejudiced a substantial right. *Id.*

The crux of the alleged error is whether the old or the new Article 60, UCMJ governed the Convening Authority. Article 60 previously gave convening authorities plenary discretion regarding findings and sentences. Article 60(c)(4)(A), UCMJ (2013) (amended 2014). That changed dramatically with the National Defense Authorization Act for Fiscal Year 2014 (FY14 NDAA), which amended Article 60 to provide that a convening authority "may not disapprove,

---

[2] Two appellate exhibits were so numbered. Here, we reference the second one.

commute, or suspend in whole or in part an adjudged sentence of confinement for more than six months or a sentence of dismissal, dishonorable discharge, or bad conduct discharge" unless certain exceptions exist—none of which apply here.[3]

The FY14 NDAA provided an effective date of 180 days from the Act's enactment—equating to 24 June 2014—and that the new Article 60 "shall apply with respect to offenses committed under [the UCMJ] on or after that effective date."[4] The next year's NDAA clarified how to handle offenses that straddled the effective date:

> With respect to the findings and sentence of a court-martial that includes both a conviction for an offense committed before the effective date . . . and a conviction for an offense committed on or after that effective date, the convening authority shall have the same authority to take action on such findings and sentence as was in effect on the day before such effective date . . . ."[5]

As charged, Specification 2 of the Additional Charge alleged sexual abuse of a child between April 2014 and September 2015—thus straddling the effective date of 24 June 2014. But after hearing the evidence, the military judge, through exceptions and substitutions, found Appellant guilty of sexual abuse between December 2014 and April 2015—entirely after the new Article 60's effective date.

Appellant avers that because the specification was charged and prosecuted as occurring both before and after the effective date, the Staff Judge Advocate erred by advising that the new Article 60 applied. He cites no authority, however, for the proposition that the Staff Judge Advocate was incorrect in looking to the findings rather than the charging document to determine when the offense was "committed." Indeed, an ordinary understanding would support that it is the fact-finder who conclusively determines whether and when an offense was committed, not a prosecutor through a mere allegation. At any rate, Appellant has failed to demonstrate that the Staff Judge Advocate plainly erred in his advice. We thus need not analyze the prejudice prong and decline to grant relief.

---

[3] Pub. L. No. 113–66, 127 Stat. 956–57 (2013).
[4] *Id.* at § 1702(d)(2).
[5] Pub. L. No. 113–291, 128 Stat. 3292, 3365 (2014).

**Post-Trial Delay**

The Convening Authority's action was taken 159 days after the conclusion of Appellant's court-martial. This is thirty-nine days past the 120-day standard established by the United States Court of Appeals for the Armed Forces and is presumptively unreasonable. *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). We thus apply four factors to determine whether Appellant has been deprived of due process: (1) the length of the delay; (2) the reasons for the delay; (3) Appellant's assertion of the right to timely review and appeal; and (4) prejudice. *Moreno*, 63 M.J. at 135 (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). We consider three types of prejudice that may arise from post-trial processing delay: (1) oppressive incarceration; (2) anxiety and concern; and (3) impairment of ability to present a defense at a rehearing. *Id.* at 138–39.

Considering these four factors, we conclude that Appellant was not deprived of due process. Much of the delay was in getting the record authenticated, which the military judge explained was due to his presiding simultaneously over two other general courts-martial; his out-of-area-travel; and several lengthy records of trial arriving for his authentication at the same time. There also was a short delay due to a change of defense counsel for post-trial matters. We also observe that although the Staff Judge Advocate's recommendation and addendum were both served after 120 days elapsed and noted the delay, Appellant did not complain about it and instead received precisely the sentence relief he requested as a matter of clemency. Finally, and most significantly, we find that Appellant suffered no prejudice.

Even when we find no due process violation, we can, under appropriate circumstances, grant relief for excessive delay under Article 66(c), UCMJ. *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002). We decline to grant such relief here. We note that the Government, in particular the Staff Judge Advocate, acted with diligence and an appropriate sense of urgency in attempting to marshal the record through the post-trial process in a timely fashion. The delay, which was relatively short in the larger scheme of post-trial processing, was explained and not unreasonable.

### Decision

We have reviewed the record in accordance with Article 66, UCMJ. Upon such review, the findings and sentence are determined to be correct in law and fact and, on the basis of the entire record, should be approved. Accordingly, the findings of guilty and the sentence, as approved below, are affirmed.

Chief Judge McCLELLAND and Judge HAVRANEK concur.

For the Court,



Sarah P. Valdes
Clerk of the Court